449 P.2d 378

**John M. RUNGEE, Plaintiff-Appellant,**

**v.**

**ALLIED VAN LINES, INC., a licensed I C C public carrier, Defendant-Respondent.**

**No. 10049.**

Supreme Court of Idaho.

Dec. 24, 1968.

Hawkins & McCabe and David A. Frazier, Coeur d'Alene, for plaintiff-appellant.

Miller & Knudson, Coeur d'Alene, for defendant-respondent.

McQUADE, Justice.

The evidence produced at the trial before Hon. Dar Cogswell, district judge, sitting without a jury, disclosed the following facts. John M. Rungee, appellant, is a professional engineer with the international firm of Rader and Associates, architects and engineers of Miami, Florida. This position often requires Rungee and his family to change residence. Prior to August, 1965, Rungee and his family lived in Tampa, Florida. He was then required to move to Coeur d'Alene, Idaho. On approximately

August 31, 1965, Rungee contracted with respondent Allied Van Lines, Inc., a licensed I.C.C. carrier (hereafter referred to as Allied), to have his household goods shipped from Tampa to Coeur d'Alene by Allied's trucks.

Rungee was advised that the amount of protection against damage to goods (then thirty cents per pound of goods shipped) afforded by the tariffs filed by interstate carriers with the Interstate Commerce Commission was inadequate. Part of the inducement for the shipping contract therefore consisted of Allied's statements in its advertising magazine:

> "Obviously, any article of exceptional value cannot be adequately covered this way. For example, if you had a precious vase worth five hundred dollars that weighed one pound, the legal coverage would be only thirty cents.

> "For this reason Allied developed *Comprehensive Transit Protection,* which covers your valued belongings to the *full* extent of their declared value. * * * [Emphasis in original].

> "Allied brings you this full protection at the rate of fifty cents per one hundred dollar valuation." [1]

Rungee received a standard household goods bill of lading and freight bill upon which he declared the value of the entire shipment to be $5,000.00. Pursuant to Allied's self-insurance plan, Rungee then promised to pay to Allied a premium in an amount equal to fifty cents per one hundred dollars of the shipment's declared value.

The goods were delivered to the Rungee's new residence at Coeur d'Alene on September 20, 1965, in a damaged condition. Rungee paid the entire cost of the move by certified check before the goods were unloaded. On that same date, the driver of Allied's van and a representative of Luke's Transfer, the local agent for Allied, were informed of the damage done to the goods. The damage done was noted on the descriptive inventory forms, as is the regular practice. Allied did not dispute the fact of damage but only its amount.

During the five months from September 20, 1965, to February 17, 1966, Rungee attempted to deal with Allied in order to reach a settlement on the damage claim. Allied requested that Rungee secure estimates of the damage done. Rungee did so for about one and one-half months from sources in Coeur d'Alene, Missoula and Spokane. Rungee wrote numerous letters and made various phone calls in his efforts to estimate the damage and to settle with Allied. This was to no avail, however, because of the "unusual delay and dilatory practices of [Allied's] claims office in Seattle." [2]

On February 18, 1966, an estimator and a claims adjuster visited the Rungee's home to determine once more the damage to the goods. The claims adjuster made a second visit on March 16, 1966. As a result of these visits, the claims adjuster indicated that he could recommend to Allied that it pay "roughly $450" for the damage. Because the estimates acquired by the Rungees had been in the $800 to $900 range, the $450 figure suggested by the adjuster remained unacceptable to them. Therefore the Rungees brought suit against Allied in April of 1966 for actual damages, general damages, punitive damages and attorney fees. On February 2, 1967, Allied made an offer of judgment for $409.34, which was declined by the Rungees. The district court gave judgment to the Rungees for $731.33 of actual damages. The Rungees have appealed.

Although Rungee's notice of appeal stated that he appealed from the "whole" of the judgment, no error is assigned with respect to either the amount of actual damages found below or the court's denial of punitive damages. The assignment of error relating to the denial of general damages for expenses incurred by Rungee in his efforts to settle the claim is without merit because he failed to submit any evidence on the extent of these damages.

---

1. Plaintiff's exhibit 1.

2. District court finding of fact number XV.

Thus, the only issue left for decision on this appeal is whether the disallowance of attorney fees was proper. Appellant argues that Allied is an "insurer or insurance company" for purposes of I.C. § 41–1839 under which he contends attorney fees should have been awarded. Respondent Allied argues that even if it is an insurer neither the contract nor federal law provides for the assessment of attorney fees against an interstate carrier and therefore I.C. § 41–1839 cannot be applied to it by virtue of the supremacy clause of the United States Constitution.

An initial question is whether there was an insurance contract between the parties in this case. Insurance has been defined as " * * * a contract by which one party, for a consideration * * * promises to make a certain payment of money upon the destruction or injury of something in which the other party has an interest." [3] Although Allied's literature uses the term "protection" rather than "insurance," all of the basic elements of an insurance contract are present. For a premium of twenty-five dollars, Allied agreed to indemnify Rungee for loss or damage to his household goods up to their declared value of $5,000. Thus, there was an insurance contract between the parties here, with Allied the insurer and Rungee the insured.[4] This conclusion is supported by uncontradicted testimony in the record and is not challenged by Allied on this appeal.

The next question is what law applies to this insurance contract. The parties have assumed that I.C. § 41–1839 applies. However, I.C. § 41–1801(2) provides that Chapter 18 of Title 41 of the Idaho Insurance Code, which includes I.C. § 41–1839, "applies as to all insurance contracts * * * other than * * * policies or contracts not issued for delivery in this state nor delivered in this state." Since the contract for "comprehensive protection" of Rungee's goods was in fact delivered in Florida, it would appear that Idaho law does not apply to it. However, while most of Chapter 18 of the Insurance Code deals with the formation of the terms of the contract, § 41–1839 provides the insured with a legal remedy which applies whether or not included in the contract terms. It is a general enforcement provision. For this reason we do not interpret § 41–1801(2) so as to preclude the application of § 41–1839 to certain contracts delivered outside of Idaho. The legislature could not have intended to exclude by such language the cases in which policies are delivered outside of Idaho to persons who thereafter take up residence in Idaho and subsequently find it necessary to sue their insurers in Idaho courts. This interpretation is more consistent with the general purport of Chapter 18 which is to protect Idaho residents by regulating the insurance issued in their behalf. I.C. § 41–1801 itself has an expansive scope inasmuch as it reaches all contracts negotiated, entered, and issued outside Idaho so long as they are issued for delivery or delivered in Idaho.

If I.C. § 41–1801(2) does not necessarily bar the application of § 41–1839 to certain insurance contracts delivered outside of Idaho, the question remains whether § 41–1839 is applicable. There is presented a choice between Florida law and Idaho law. In one respect, this choice presents a "false conflict" [5] because the basic policies of Florida and Idaho are the same in providing that their courts may award attorney fees to an insured who finds it necessary to sue his insurer.[6] However, as a technical

---

3. Couch, Insurance 2d § 1:2 (Anderson ed.1959); Accord, Annotation, What Constitutes Insurance, 119 A.L.R. 1241 at 1242–1243 (1939); cf. Couch, Insurance 2d § 1:106; I.C. §§ 41–102, 41–103; Fla.Stat. §§ 624.02, 624.03, F.S. A.

4. See also I.C. §§ 41–1802, 41–1803.

5. Cavers, "The Choice-of-Law Process" 89 (1966).

6. Fla.Stat. § 627.0127: "Attorney fee. —(1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of an insured * * * under a policy or contract executed by the insurer, the trial

matter, it appears that if Florida law applies, then no attorney fee may be awarded because the Florida statute provides for such an award only if the insured prosecutes his claim and procures his judgment in the Florida courts.[7] Thus, there is a genuine conflict of laws insofar as the outcome is concerned, and it is necessary to determine whether Idaho or Florida law applies.

■ It has been held that the law of the forum governs this type of remedy on an insurance contract.[8] However, to the extent that these cases rely upon a distinction between procedure as governed by the law of the forum and substance as governed by the law of the place of contracting, we do not follow their reasoning. Courts often apply the terms "procedural" and "substantive" to laws as a matter of conclusory labeling without disclosing the basis for the conclusion.[9] Moreover, matters relating to the measure of damages are said to be substantive rather than procedural.[10] More specifically, statutes such as I.C. § 41–1839

are said to create substantive liabilities which cannot be imposed as a matter of procedure.[11] To characterize these statutes as procedural would be to invite forum-shopping. Therefore we view the question as one of deciding whose law, as to the particular issue involved, has the more significant relationship to the transaction and the parties.[12]

This process has been summarized by the American Law Institute's proposed official draft of the Restatement Second of Conflict of Laws, (1968), chapter 8, Contracts:

"§ 188. *Law Governing in Absence of Effective Parties' Choice.* (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the State which, as to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

"(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying

---

court, or, in the event of an appeal in which the insured * * * prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured * * * a reasonable sum as fees or compensation for the insured's * * * attorney prosecuting the suit in which the recovery is had. * * *"; I.C. § 41–1839: "Allowance of attorney fees in suits against insurers.—(1) Any insurer issuing any policy * * * or contract of insurance * * * of any kind or nature whatsoever, which shall fail for a period of thirty (30) days after proof of loss has been furnished * * * to pay to the person entitled thereto the amount justly due under such policy * * * or contract, shall in any action thereafter brought against the insurer in any court in this state for recovery under the terms of the policy * * * or contract, pay such further amount as the court shall adjudge reasonable as attorney's fees in such action. * * *"

7. See Feller v. Equitable Life Assur. Soc., 57 So.2d 581 (Fla.1952).

8. New Empire Life Insurance Company v. Bowling, 241 Ark. 1051, 411 S.W.2d 863 at 865 (1967); Harmon v. Lumbermens Mutual Insurance Company, 164 So.2d 397 at 400–402 (La.App.1964);

Foy v. Mutual Life Insurance Company of New York, 127 F.Supp. 916 at 919 (N.D.Fla.1955); Feller v. Equitable Life Assur. Soc., note 6, supra; Traveler's Ins. Co. v. Harris, 178 S.W. 816 at 819–820 (Tex.Civ.App.1915), following Franklin Ins. Co. v. Villeneuve, 25 Tex. Civ.App. 356, 60 S.W. 1014 at 1016–1017 (1901); Kline Bros. & Co. v. Royal Ins. Co., 192 F. 378 at 389 (S.D.N.Y.1911).

9. See Cavers, "The Choice-of-Law Process" 280–281 (1966); Goodrich, Conflict of Laws § 80 (Scoles ed. 1964).

10. Goodrich, op. cit. note 9, supra, § 91.

11. Leflar, Conflict of Laws § 132 (1959).

12. For other cases in which various jurisdictions have adopted the "significant contacts" approach to conflicts of law questions, see, e. g., Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1 (1963); Kilberg v. Northeast Airlines, Inc., 9 N.Y. 2d 34, 172 N.E.2d 526, 211 N.Y.S.2d 133 (1961); Clark v. Clark, 107 N.H. 351, 222 A.2d 205 (1966); Casey v. Manson Constr. & Eng'r Co., 84 Or.Adv.Sh. 947, 428 P.2d 898 (1967); Reich v. Purcell, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967) per Traynor, J.

the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue."

The A.L.I. Conflicts Restatement Second (proposed official draft) § 6 provides in part as follows

"Choice of Law Principles.

\*     \*     \*     \*     \*     \*

"(2) When there is no [statutory] directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied."

This choice-of-law process involves not the mechanical jurisdiction-selecting rules of the first restatement but rather a realistic inquiry into the relationship of various laws to the particular issue to be decided. The contacts of the transactions and of the parties with various jurisdictions are weighed only as they are significant for the purposes of the laws involved.

As applied to the particular issue arising under the contract of insurance in the present case, the following choice-influencing considerations appear. Florida was the place of negotiation and contracting, while Idaho was the place of performance of Allied's duties as an insurer. Appellant also paid the costs of shipment inclusive of the premium for the extra insurance, in Idaho. Appellant's goods were shipped from Florida to Idaho through many states, and where the damage was done does not appear. However, it is immaterial where the damage was done, for in any event the damage was discovered by appellant in Idaho, the state of destination. It is here that appellant was required to bargain and sue for his loss. Appellant is an Idaho resident, as he was at the time he brought suit. Allied is a national concern with agencies in Idaho.

The needs of the interstate system relative to Allied would indicate, perhaps, that federal law be applied, but this consideration is subsumed by the pre-emption issue discussed infra. Relative to individual shippers of household goods, the needs of the interstate system should require that persons moving between states have protection of the laws equal to that afforded to persons who have not crossed state lines. The relevant policies of Idaho and Florida as to this issue are the same insofar as insurers are required to pay just claims promptly. This approach will yield a reasonably certain, predictable and uniform result, for in such cases the law of the state of destination will generally have a more significant relationship to the issue of proper settlement of damage claims. That is the state from which the insured will conduct his efforts to settle his claim. The insured would be unlikely to sue the carrier in the state of his abandoned residence. It would be arbitrary to hold applicable the

law of one of the states through which the goods were shipped. It is the state of destination which henceforth will have a concern for the insured's contractual rights.

The provisions of the Second Proposed Restatement dealing with specific contracts or issues are also pertinent here, although some of these are of limited helpfulness because of the peculiar qualities of the contract of insurance between Allied and Rungee. Section 193 of such Restatement, which states that contracts of casualty insurance are governed by the law of the state of the principal location of the insured risk, is not helpful because appellant's goods constituting the insured risk had no principal location. Section 197 dealing with contracts of transportation provides as follows:

"The validity of a contract for the transportation of * * * goods and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state from which * * * the goods are dispatched, unless, with respect to the particular issue, some other state has a more significant relationship to the contract and to the parties, in which event the local law of the other state will be applied."

This provision is not precisely applicable to the case at bar because the right to attorney fees is created not by the contract but by statute. Insofar as the right to attorney fees may be viewed as contractual term imposed by statute, comment C to this provision indicates that the law of the state of destination may be applied when its relationship to the particular issue is more significant, as we believe it is in this case. Section 206 refers to details of performance to the local law of the place of performance. Thus, Allied's performance of its duties to adjust, settle and pay appellant's claim for damage would be referred to the law of Idaho. The reporter's note to this section states that "the exact time when performance is due is a question that

falls within the rule of this Section." We therefore conclude that Idaho law applies to the insurance issue in this case.

■ The final question is whether the award of a reasonable attorney fee to appellant is precluded by federal law by virtue of the supremacy clause of the United States Constitution. Aside from the question of federal pre-emption of this field, there is ample justification for the exercise of the police power of the states in this area.

Turning to the pre-emption issue, it is necessary first to determine the extent to which interstate motor carriers are regulated by federal law. Motor carriers are governed by part II of the Interstate Commerce Act of 1887, enacted as the Motor Carriers Act of 1935, 49 U.S.C.A. §§ 301–327, 49 Stat. 543 (1935). The determination of a motor carrier's liability for loss or damage to properties referred by 49 U.S.C.A. § 319 to the provisions of part I of the Interstate Commerce Act governing carrier liability, viz., 49 U.S.C.A. § 20(11). It is there provided in part that "any common carrier * * * shall be liable * * for the full actual loss damage, or injury to * * * property [shipped in interstate commerce]."

Respondent contends that Allied's total liability may not exceed the full amount of damage to the goods. It relies upon 49 U.S.C.A. § 20(11) and the case of Thompson v. H. Rouw Co.[13] Although there are many grounds of distinction between that case and the present one, we believe that case is not pertinent here because the attorney fee there was assessed against a railroad rather than a motor carrier. Railroads are governed by part I of the Interstate Commerce Act, 49 U.S.C.A. §§ 1–27, 24 Stat. 379 (1887), which contains in 49 U.S.C.A. § 8 a specific provision for attorney fees recoverable from a carrier which in some way violates the act. The Texas court in the *Rouw* case held that this provision indicated a federal intention to

13. 237 S.W.2d 662 (Tex.Civ.App.1951).

pre-empt state laws respecting the award of attorney fees and therefore refused to uphold an award of attorney fees against the railroad which had been based upon a Texas statute. However, 49 U.S.C.A. § 8, by force of 49 U.S.C.A. § 1(1) and (2),[14] does not apply to motor carriers, and the Motor Carrier Act contains no similar provision. In the absence of such a statute, it is necessary to look to the few cases in this area to determine whether Congress has pre-empted this field of law.

■ We do not read the precedents [15] as broadly preventing any addition to a carrier's liability irrespective of its particular basis. What is clear from the precedents is that states may not apply their own rules of law to the determination of the carrier's liability for loss, damage or injury to the goods. In the *Croninger* case, the shipper sued the carrier for the full value of a diamond ring lost in shipment. The Kentucky court gave judgment under Kentucky law for the full value of the ring despite the tariff's limitation of its value to fifty dollars. The Supreme Court reversed, stating that the Interstate Commerce Act superseded state law on the carrier's liability for loss or damage to property. In the *Harris* case, the shipper recovered damages for injury to the goods and attorney fees under a Texas statute. The Supreme Court upheld the award of attorney fees against an attack based upon federal pre-emption, stating that

"it has been held, in a series of recent cases [citations omitted], that the special regulations and policies of particular states upon the subject of the carrier's liability for loss or damage to interstate shipments * * * have been superseded. "But the Texas statute now under con-

sideration does not in anywise either enlarge or limit the responsibility of the carrier for the loss of property entrusted to it in transportation * * *. [I]t imposes not a penalty, but a compensatory allowance for the expense of employing an attorney * * * where the carrier unreasonably delays payment of a just demand and thereby renders a suit necessary.

\*    \*    \*    \*    \*    \*

"The local statute * * * does not at all affect the ground of recovery or the measure of recovery; it deals only with a question of costs, respecting which Congress has not spoken. Until Congress does speak, the state may enforce it * * *."[16]

In the *Varnville Furniture* case, the shipper recovered damages for injury to goods shipped and a fifty-dollar penalty under certain South Carolina statutes.[17] Those statutes made the carrier liable "for the full amount of the claim for loss * * * and * * * a penalty of fifty dollars" in the event that the carrier failed within forty days from notice either to inform the shipper where and by what carrier the damage was done or to adjust and pay the claim. Justice Holmes noted that while the statute in the *Harris* case "did not 'in any way enlarge the responsibility of the carrier' for loss or 'at all affect the ground of recovery or the measure of recovery'," [these statutes extended] the liability to losses on other roads in other jurisdictions, and increase[d] it by a fine difficult to escape. [The act] overlap[ped] the Federal act in respect of the subjects, the grounds, and the extent of liability for loss."[18]    The Court therefore held that

14. Cf. Yutchnitch v. Blueway Trailways, Inc., 29 N.Y.S.2d 432 (Sup.1941).

15. Adams Express Co. v. Croninger, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1912) ; Missouri, K. & T. R. Co. v. Harris, 234 U.S. 412, 34 S.Ct. 790, 58 L.Ed. 1377 (1914); Charleston and W. C. R. Co. v. Varnville Furniture Co., 237 U.S. 597, 35 S.Ct. 715, 59 L.Ed. 1137 (1915).

16. Harris, note 15, supra, at pp. 420–422, 34 S.Ct. at p. 793.

17. S.C.Civil Code of 1912 §§ 2572, 2573.

18. Varnville Furniture, note 15, at p. 603, 35 S.Ct. at p. 716.

the penalty was invalid as a burden upon interstate commerce.

None of these cases bars the states from increasing the liability of carriers upon grounds apart from the loss or damage to the goods. The Idaho statute in this case does not increase the liability of the carrier for loss or damage to the goods. The grounds for Allied's liability for attorney fees under I.C. § 41–1839 consist of its actions which caused its insured to incur expenses of an attorney in order to collect amounts justly due under a contract of insurance. Like the statute in *Harris*, the Idaho statute is compensatory in nature,[19] unlike the expressly penal statute in *Varnville Furniture*. The contract for extra insurance on the goods is an element which was absent from all of the cases just discussed. We fail to see why Allied's liability as an insurer should be different from what would be the liability of an ordinary insurance company with whom Rungee might have insured his goods. Allied is an interstate carrier, but to the extent it engages in the insurance business with persons whom the state of Idaho may legitimately protect, it also becomes subject to the police power of the state as expressed by the insurance laws. The cases do not indicate that interstate carriers will be immune from state regulation irrespective of the types of activities the carriers conduct.

This conclusion is fortified by the provisions of the McCarran-Ferguson Act, 15 U.S.C.A. §§ 1011–1015, 59 Stat. 33 (1945), which sets out federal policy on insurance. In particular,

"Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States."[20]

It is also provided that

"No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance * * * unless such Act specifically relates to the business of insurance * * *."[21] The developments leading to the enactment of this statute have been summarized by the Supreme Court as follows:

"When we held in United States v. South-Eastern Underwriters Ass'n., 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440, that the modern business of insurance was 'interstate commerce,' we put it in a category which Congress could regulate and which, if our prior decisions controlled, could not in some respects be regulated by the States, even in the absence of federal regulation. See Frankfurter, The Commerce Clause (1937); Rutledge, A Declaration of Legal Faith (1947).

"Congress promptly passed the McCarran-Ferguson Act, 59 Stat. 33, 15 U.S.C. § 1011, which provided that the regulation and taxation of insurance should be left to the States, without restriction by reason of the Commerce Clause. Subsequently, by force of the McCarran-Ferguson Act, we upheld the continued taxation and regulation by the States of interstate insurance transactions. Prudential Ins. Co. v. Benjamin, 328 U.S. 408, 66 S.Ct. 1142, 90 L.Ed. 1342."[22]

Thus, as applied to the case at bar, the application of I.C. § 41–1839 to the contract of insurance between Rungee and Allied will not be precluded by federal law unless some provision thereof expressly deals with the insurance issue here presented. We have found nothing in the federal

19. Halliday v. Farmers Insurance Exchange, 89 Idaho 293 at 301, 404 P.2d 634, at 639 (1965).

20. 15 U.S.C.A. § 1011.

21. 15 U.S.C.A. § 1012(b).

22. State Bd. of Ins. v. Todd Shipyards, 370 U.S. 451 at 452, 82 S.Ct. 1380 at 1381, 8 L.Ed.2d 620 (1962).

statutes [23] or regulations [24] which purports to do so.

We are aware of the regulations in 49 C.F.R. Part 1056 which set forth the time periods within which movers of household goods must acknowledge, adjust and settle damage claims. Those time periods differ from the thirty-day period allowed by I.C. § 41–1839. Thus, the Idaho statute and the federal regulations impose seemingly inconsistent obligations upon carriers. However, when a carrier sells to shippers comprehensive insurance protection on the goods, we view the carrier as removing itself from the ordinary scope of those regulations and into the area of insurance which Congress has left to state regulation. As no provision of the federal statutes or regulations deals expressly with the carrier's liability for attorney fees when it unreasonably delays payment of claims such as appellant's in this case, state law is applicable.

For these reasons, the judgment of the district court is affirmed as to the award of actual damages but reversed and remanded for the determination and award to appellant of a reasonable attorney's fee.

TAYLOR, McFADDEN, and SPEAR, JJ., concur.

SMITH, C. J., concurs in the conclusion.

23. 49 U.S.C.A. §§ 301–327.

24. 49 C.F.R. Parts 1043 and 1056.