889 P.2d 82

**SEUBERT EXCAVATORS, INC., an Idaho corporation, Plaintiff–Appellant,**

v.

**ANDERSON LOGGING COMPANY, an Idaho corporation, Defendant–Respondent.**

No. 20566.

Supreme Court of Idaho.

Jan. 27, 1995.

---

* *Justice Bistline participated fully in the decision of this case prior to his retirement on December* 1, 1994.

Eberle, Berlin, Kading, Turnbow & McKlveen, Boise, for appellant. Stanley J. Tharp argued.

Cantrill, Skinner, Sullivan & King, Boise, for respondent. Tyra H. Stubbs argued.

TROUT, Justice.

This is an action for indemnity in which the appellant, Seubert Excavators, Inc. (Seubert) seeks to recover funds paid in settlement of an action brought against it in the state of Oregon. The Oregon lawsuit was filed by the survivors of an employee of one of Seubert's subcontractors, Anderson Logging Company (Anderson).

## I.

### BACKGROUND AND PROCEDURAL HISTORY

Seubert is an Idaho corporation with its principal place of business in Cottonwood, Idaho. On August 26, 1987, it was awarded a general contract by the federal government for the construction of a road near John Day, Oregon. It subsequently entered into a subcontract agreement with Anderson, an Idaho corporation having its principal place of business in Naples, Idaho. This agreement was negotiated and executed in Idaho and, by its express terms, required Anderson to hold Seubert harmless from any damages to persons or property caused by Anderson or its employees. It also required Anderson to provide adequate worker's compensation coverage.

Following the project's commencement, Gary Wayne Farrens, an Anderson employee and Idaho resident, was killed in a work-related accident. Farrens' wife made a claim for, and received, worker's compensation benefits from Anderson's insurance carrier in the state of Idaho. She then filed an action against Seubert in Oregon pursuant to the Oregon Employer Liability Law (O.R.S. § 654.305 to .335). After the Oregon court held that the relatively short Idaho statute of limitations was inapplicable, Seubert settled the lawsuit for $100,000. It now seeks indemnification for this amount from Anderson pursuant to the terms of the subcontract agreement.

Under both Oregon and Idaho worker's compensation law, the liability of a direct employer of an injured worker, such as Anderson, is limited to the amount of worker's compensation paid to the employee or his heirs. O.R.S. § 656.018; I.C. § 72–209. In Oregon, this limitation applies to claims against the employer brought by a third party for contribution or indemnity and, with limited exceptions, all contrary agreements are void. O.R.S. § 656.018(1). Thus, under Oregon law the indemnification provision in the subcontract agreement would be void. However, under Idaho law the statutory limitation on an employer's liability may be varied by agreement. I.C. § 72–209(2); Pocatello Indus. Park Co. v. Steel W. Inc., 101 Idaho 783, 621 P.2d 399 (1980). It is Seubert's contention that through the indemnification provision in the subcontract agreement, the parties did just that.

Anderson brought a motion for summary judgment asking the district court to conclude, as a matter of law, that Oregon law should apply in this case. The district court, utilizing the conflict of laws analysis set forth in Barringer v. State, 111 Idaho 794, 727 P.2d 1222 (1986), determined that the state of Oregon had the most significant relationship to the transaction and parties. Therefore,

Oregon law was applied, rendering the indemnification clause in the subcontract agreement void.

## II.

### WHETHER THE DISTRICT COURT ERRED IN HOLDING THAT OREGON LAW APPLIES IN THIS CASE

This case presents a classic conflict of laws: although Idaho law allows the statutory limitation on an employer's liability to be varied by agreement, Oregon law does not. Therefore, whether Seubert may maintain an action pursuant to the indemnification provision in the subcontract agreement turns on which state's law governs the effect of that agreement. The district court relied on the "most significant relationship" test as set forth in *Barringer* to conclude that Oregon law was controlling. On appeal, Seubert contends the lower court applied the wrong conflict of laws analysis to the facts of this case. We agree.

■ We note at the outset that the determination and application of the appropriate conflicts analysis is a question of law. As such, it is a question over which we exercise free review. *See, e.g., Clark v. Saint Paul Property & Liab. Ins. Cos.*, 102 Idaho 756, 757, 639 P.2d 454, 455 (1981) (citations omitted).

■ Although never adopted in full, this Court has opted in favor of applying the most significant relationship test set forth in the *Restatement (Second) of Conflict of Laws* (the Restatement). *E.g., Johnson v. Pischke*, 108 Idaho 397, 700 P.2d 19 (1985) (adopting § 145 of the Restatement); *Rungee v. Allied Van Lines, Inc.*, 92 Idaho 718, 449 P.2d 378 (1968) (adopting the proposed official draft of what became § 188 of the Restatement). The goal of this test is to identify the state

most significantly related to a particular issue and to apply its law to resolve that issue. In doing so, the court first identifies various factual contacts between the transaction or parties and the interested states. It then evaluates these contacts in light of certain broad policy concerns.[1] However, the relevant factual contacts and the importance of particular policy concerns vary depending upon the nature of the substantive issues implicated by the underlying dispute.

■ The state which has the most significant relationship with respect to an issue in tort is determined by reference to the following contacts:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*Johnson*, 108 Idaho at 400, 700 P.2d at 22 (quoting Restatement § 145). Of these contacts, the most important in guiding this Court's past decisions in tort cases has been the place where the injury occurred. *See, e.g., Barringer*, 111 Idaho at 799, 727 P.2d at 1227 (no contact deemed more significant than the place of injury) (citing *Johnson*).

■ With regard to an issue in contract, a different set of factual contacts are considered in determining which state has the most significant relationship to the dispute:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

*Johnson*, 108 Idaho at 400, 700 P.2d at 22 (quoting Restatement § 6); *Rungee*, 92 Idaho at 723, 449 P.2d at 383 (quoting proposed official draft of Restatement § 6).

1. The policy concerns which guide the conflicts determination are as follows:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

*Rungee,* 92 Idaho at 722–23, 449 P.2d at 382–83 (quoting proposed official draft of Restatement § 188). Furthermore, because parties to a contract are likely to give advance thought to the legal consequences of their actions, the policies of protecting justified expectations and increasing the predictability and uniformity of result take on greater importance in contracts cases.

Given this framework, the logical first step in this case is to determine whether this dispute is contractual in nature or whether it is based in tort. Anderson has taken a transactional view and argues that the liability here arose from a tort that occurred in Oregon. Therefore, Anderson contends the *Johnson* approach is the appropriate test to be applied. The district court apparently agreed with Anderson since it relied on *Barringer v. State,* 111 Idaho 794, 727 P.2d 1222 (1986), to conclude that Oregon has the most significant relationship to this dispute.[2]

■ Anderson's argument and the district court's analysis both overlook the fundamental nature of this dispute. "What is involved here is not an action in tort to establish liability, but rather a[n] ... action involving interpretation of [a] written contract." *Unigard Ins. Group v. Royal Globe Ins. Co.,* 100 Idaho 123, 126, 594 P.2d 633, 636 (1979). The underlying liability in this case was established in the Oregon lawsuit. The question now presented is whether Seubert is entitled to indemnification pursuant to the subcontract agreement. The resolution of this question depends not upon principles of tort law, but on whether Seubert's payment is covered by a contractual provision and whether that provision is enforceable. Thus, the appropriate conflicts analysis is that set forth in *Rungee* rather than the *Johnson* test relied on by the district court.

■ In applying the proper analysis to the present case, we conclude as a matter of law, that Idaho has the most significant relationship to this contractual dispute. Although the subcontract agreement was to be performed in Oregon, it was negotiated and executed in Idaho between two Idaho corporations. Because both of these corporations maintain their respective places of business within this state, three of the five relevant contacts point to Idaho as having the most significant relationship to this dispute. However, as we have stated, the conflicts determination is not to be made by a mechanical counting of the contacts. *Johnson,* 108 Idaho at 400, 700 P.2d at 22. Therefore, it is necessary to evaluate these contacts in light of the guiding policy concerns.

When Seubert and Anderson negotiated and executed their contract in Idaho, we must presume they expected that it would be fully valid and enforceable. *See Coeur d'Alene Lakeshore Owners & Taxpayers v. Kootenai County,* 104 Idaho 590, 595, 661 P.2d 756, 761 (1983) (courts presume that parties to a contract intended a lawful construction of that contract). While these expectations are not expressed in the contract itself, it defies logic to believe the parties would include an indemnification provision which they did not intend to be fully binding on them. As between Oregon and Idaho this necessarily mandates the application of Idaho law to this provision. Furthermore, the goals of certainty, predictability, and uniformity of result will be served by applying Idaho law. Were Anderson's contentions correct, a determination of the applicable law to govern the interpretation of the contract would depend upon the fortuity of where the injury happened to occur. While this may be appropriate for a tort analysis, it is unreliable in the context of an analysis of contract provisions.

---

2. *Barringer* arose from an accident in which a truck driver from the state of Washington was killed in Idaho. The decedent's wife filed a complaint alleging that the state of Idaho was negligent. The state, in turn, filed a third party complaint *against* the decedent's Washington employer claiming indemnification and contribution due to the fact that the employer was a joint tortfeasor. With regard to the third party claim, there was a conflict between Washington and Idaho law. The *Barringer* Court applied the *Johnson* test to resolve the conflict and determine that Idaho, the place of the injury, was most significantly related to the occurrence. *Id.,* 111 Idaho at 799, 727 P.2d at 1227.

Finally, although Oregon has a significant interest in protecting workers injured at Oregon work sites and in promoting a safe workplace, this interest is diminished when the injured worker is not an Oregon resident and did not make a claim for worker's compensation benefits in that state. Idaho, on the other hand, has a strong interest in upholding the validity of contracts entered into in Idaho between Idaho residents. Furthermore, the Idaho legislature has expressed a policy of allowing an employer and third parties to share liability in a manner different than that contemplated under Idaho worker's compensation statutes. This policy would seem controlling where Idaho's worker's compensation system has been utilized by the heirs of the injured party.

Based on our evaluation of the factual contacts and the relevant policy concerns, we hold that the state of Idaho has the most significant relationship to this dispute. Therefore, Idaho law governs the effect of the indemnification clause in the subcontract agreement and the district court erred in applying Oregon law. Accordingly, the portion of the district court's order granting summary judgment to Anderson is reversed and the cause remanded for further proceedings consistent with this opinion.

### III.

### WHETHER SEUBERT IS PRECLUDED FROM RAISING THE CONFLICT OF LAWS ISSUE

Anderson contends that the issue of which state's law applies to all claims arising out of Farrens' death was established in the Oregon lawsuit when the Oregon court concluded that Idaho's statute of limitations was not controlling. Therefore, pursuant to the doctrine of collateral estoppel, Seubert may not re-litigate the issue here. The district court dismissed this argument holding that Seubert was not precluded from litigating the conflict of laws issue in this case.

■ To determine whether the doctrine of collateral estoppel or issue preclusion is applicable we ask: (1) whether the party against whom the prior decision is asserted had a full and fair opportunity to litigate the

issue in the earlier case; (2) whether the issue decided in the prior case was identical with the one presented in the subsequent litigation; (3) whether the issue was actually decided in the prior litigation; (4) whether there was a final judgment on the merits; and (5) whether the party against whom the plea is asserted was a party or privy of a party to the prior adjudication. *Anderson v. City of Pocatello*, 112 Idaho 176, 183–84, 731 P.2d 171, 178–79 (1986) (citations omitted).

■ In this case, the second element of the *Anderson* test has not been met. The issue decided in the Oregon action is not identical to that presented here even though both fall under the generic label of "conflict of laws." The Oregon lawsuit was in the nature of a wrongful death action. The conflict of laws presented there was whether the Oregon or the Idaho wrongful death statute of limitations was controlling. In Idaho, this tort issue would be resolved by applying the *Johnson* test. However, since the present action is a contractual dispute, the proper resolution of the conflicts issue is reached by applying the analysis set forth in *Rungee* and *Unigard*. Thus, the conflict of laws issues presented in the two actions, as well as the legal standards to be used in resolving them, are not identical. *See Peterson v. Clark Leasing Corp.*, 451 F.2d 1291, 1292 (9th Cir. 1971) (issues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits is the same) (citing 1B *Moore's Federal Practice* ¶ 0.443[2] ). Accordingly, the portion of the district court's order granting summary judgment to Seubert on this issue is affirmed.

### IV.

### WHETHER THE SOURCE OF LIABILITY WAS AN AGREEMENT SEPARATE FROM THE SUBCONTRACT AGREEMENT

Anderson finally contends that the liability in the Oregon lawsuit arose from the activities of one of its owners, Lowell Anderson, acting as a Seubert employee (*ie.* construction site supervisor) under an alleged separate employment agreement. Therefore, as the liability does not stem from Anderson's

654

activities as subcontractor, the controlling agreement is the alleged separate employment agreement. Since this informal agreement does not make provision for indemnification, Anderson contends that Seubert is not entitled to be indemnified even under Idaho law.

Anderson's contentions may or may not have merit. However, in light of our disposition of this appeal, the existence and significance of any employment relationship between Seubert and Lowell Anderson are questions that Anderson is free to pursue in the district court on remand. In any event, the interpretation of any contractual provisions in this case are to be governed by Idaho law.

### V.

### CONCLUSION

As to the interpretation of the subcontract agreement, the court is to apply Idaho law and, therefore, the district court is reversed in part, and the case is remanded for further proceedings. No attorney fees on appeal. Costs are awarded to Seubert.

McDEVITT, C.J., SILAK, J., SCHILLING and LEGGETT, JJ., pro tem., concur.