53 P.3d 821

Sharon GROVER and Burton Grover,
husband and wife, Plaintiffs–
Appellants,

v.

Dr. W.E. ISOM and Steven Berg, CRNA,
Defendants–Respondents.

No. 26163.

Supreme Court of Idaho,
Boise, January 2002 Term.

July 18, 2002.

Rehearing Denied Sept. 13, 2002.

Lojek Law Offices, Boise, for appellant. Donald W. Lojek argued.

Hall, Farley, Oberrecht & Blanton, Boise, for respondents. Janet M. Schroer argued for respondent Isom and Raymond D. Powers argued for respondent Berg.

SCHROEDER, Justice.

This is a medical malpractice case. Sharon Grover (Grover) suffered a stroke while

undergoing oral surgery at Dr. W.E. Isom's office in Ontario, Oregon. The case was tried in Payette County, Idaho. The jury found that Dr. Isom breached the standard of care, but that his certified registered nurse anesthetist (CRNA) did not. However, the jury found that Grover was 100 percent responsible for her own injuries. The Growers argue that the district court wrongly applied Oregon law to the case and made errors regarding the admission of evidence. The decision of the district court is affirmed.

## I.

### FACTS AND PROCEDURAL HISTORY

In 1996 Sharon Grover was having problems with two of her upper left teeth and was experiencing frequent right-side headaches. Her family dentist recommended extraction of these teeth and referred her to Dr. W.E. Isom, an oral surgeon practicing in Ontario, Oregon.

On January 7, 1997, Grover appeared at Isom's office for oral surgery. She completed a patient intake questionnaire, which did not contain any questions regarding headaches. Grover testified, however, that she informed the receptionist and Isom and Steven Berg, Isom's CRNA, that she had been experiencing severe right-sided headaches, which she attributed to her tooth problems. These people testified that they did not remember Grover making these statements.

Oral surgery began at approximately 4:00 P.M. Berg administered brevital, a short-lasting barbituate, as the anesthesia. The surgery was completed a half-hour later, but Grover did not awake from the anesthetic as expected. After 5:00 P.M., Berg noticed that Grover's pupil was dilated and that she manifested additional symptoms of neurological distress. Berg told Isom that Grover needed to be taken to a hospital. Dr. Isom testified that he immediately called for an ambulance. However, an ambulance did not arrive until over two hours after surgery.

Grover was taken to Holy Rosary Hospital in Ontario and then by Life Flight to St. Alphonsus Hospital in Boise, where she was operated on by Dr. Peter Reedy, a neurosurgeon. Grover had suffered a stroke. She lost the use of her left arm and has difficulty walking. She requires assistance in her daily living. Several months later her husband secured a default divorce.

A malpractice suit was filed in April 1998 in Idaho, because all parties were Idaho domiciliaries. The district court determined that Oregon substantive law should apply because the injury occurred in Oregon. The trial lasted nearly two weeks. The district court ruled that Isom's discipline by the Oregon Board of Dentistry was exempt from disclosure.

The jury found that Isom had breached the standard of care, but that Berg had not. The jury also found that Isom's breach was not the proximate cause of Grover's injuries. The jury found that Grover's stroke began before she visited Isom's office, and that she contributed 100 percent to her own injuries.

The Growers moved for a new trial and a judgment notwithstanding the verdict, which were denied. The Growers argue that the district court wrongly applied Oregon law, wrongly allowed two witnesses to testify, wrongly excluded the records of the Oregon Board of Discipline, gave improper jury instructions, and that misconduct of counsel warrants a new trial.

## II.

### THE DISTRICT COURT DID NOT ERR IN APPLYING SUBSTANTIVE OREGON LAW

■ The Growers argue that the district court erred in applying Oregon law in denying amendment of the complaint to add a claim for punitive damages and in determining to exclude records of the Oregon Board of Dentistry. "The determination and application of the appropriate choice of law analysis is a question of law over which the Court exercises free review." *Ryals v. State Farm Mut. Auto. Ins. Co.*, 134 Idaho 302, 304, 1 P.3d 803, 805 (2000).

### A. Most Significant Relation Test

■ Idaho applies the "most significant relation test" as set forth in the Restatement (Second) of Conflict of Laws § 145 in deter-

mining the applicable law. In a tort case the following considerations must be taken into account:

 (a) the place where the injury occurred,

 (b) the place where the conduct causing the injury occurred,

 (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

 (d) the place where the relationship, if any, between the parties is centered.

*Seubert Excavators, Inc. v. Anderson Logging Co.,* 126 Idaho 648, 651, 889 P.2d 82, 85 (1995) (citing *Johnson v. Pischke,* 108 Idaho 397, 400, 700 P.2d 19, 22 (1985)). "Of these contacts, the most important in guiding this Court's past decisions in tort cases has been the place where the injury occurred." *Id.* (citing *Barringer v. State,* 111 Idaho 794, 727 P.2d 1222 (1986)). Since this is a malpractice action, these tort principles apply.

 Applying the facts of this case, it is clear that Oregon substantive law applies. The injury occurred in Ontario, Oregon, in Isom's office. The alleged negligence occurred in the same office. The parties lived in Idaho, but Isom's place of business was in Oregon, which could support the application of either Idaho or Oregon law. Finally, the parties' relationship was centered in Oregon. They met at Isom's office, and this is where the surgery occurred.

 Once these factors are considered, they are evaluated in light of the following policy concerns:

 (a) the needs of the interstate and international systems,

 (b) the relevant policies of the forum,

 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

 (d) the protection of justified expectations,

 (e) the basic policies underlying the particular field of law,

 (f) certainty, predictability, and uniformity of result, and

 (g) the ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 6; *DeMeyer v. Maxwell,* 103 Idaho 327, 329, 647 P.2d 783, 785 (Ct.App.1982).

 These policies support the application of Oregon law. The needs of the interstate and international systems are not likely implicated in this case. In considering relevant policies of other states it is clear that Oregon has an interest in making certain that oral surgeons practicing in Oregon are subject to Oregon laws and the Oregon standard of care. The defendants would justifiably expect to be governed by Oregon law, since they were licensed in Oregon and in this case conducted their business in Oregon. "The basic policy of negligence law is to allow a person to recover from injury proximately caused by another's violation of a duty of reasonable care." *DeMeyer,* 103 Idaho at 330, 647 P.2d at 786. As a general rule, a victim should recover under the system in place where the injury occurred. Predictability and ease in determining and applying law are also better served by applying Oregon law, because it is a simple policy that the place of the injury should generally govern the choice of law.

The Grovers are correct that in *DeMeyer,* the Court of Appeals held that the place of the injury does not always control the choice of law. However, that case and this case are distinguishable. In *DeMeyer* the plaintiff and her sister were driving through Oregon at the time of an automobile accident. *Id.* at 328, 647 P.2d at 784. The Court of Appeals ruled that under subpart (d) of Restatement Section 6 none of the parties had any expectation that Oregon law would apply. *Id.* at 329, 647 P.2d at 785. The Court of Appeals described the plaintiffs' presence in Oregon as "fortuitous," as the plaintiffs were simply driving through Oregon while going between Washington and Idaho. *Id.* at 330, 647 P.2d at 786.

This case is factually different. Grover's presence in Oregon was not fortuitous—she purposefully went to Oregon for the operation. Isom and Berg were practicing in Oregon and had every expectation that Oregon law would govern their business in Oregon.

The conduct causing the injury, as well as the injury itself, occurred in Oregon. Isom's

place of business was located in Oregon. The only factor that justifies the application of Idaho law is that the parties are Idaho residents. Every other factor supports the application of Oregon law. The district court correctly ruled that Oregon substantive law applied to this case.

### B. *Procedural v. Substantive Law*

■ The application of Oregon substantive law was proper in this case. However, the Grovers claim that the amendment of a complaint is a procedural rule, and that they should have been allowed to amend their complaint to allow a claim for punitive damages. The district court ruled that the Grovers could not amend their complaint to add a claim for punitive damages, because punitive damages are available under Oregon law only if a plaintiff shows that the defendant acted outside the scope of his practice and with malice. *See* O.R.S. § 18.550. The Grovers could not show that the defendants acted with malice.

The jury never reached the issue of damages, because it found that Mrs. Grover's negligence, not the defendants' negligence, caused Mrs. Grover's stroke. Therefore, any error in this regard would likely be harmless. However, even if the error were not harmless, the Grovers are incorrect that this is a procedural issue. This Court recently stated:

> [s]ubstantive law prescribes norms for societal conduct and punishments for violations thereof. It thus creates, defines, and regulates primary rights. In contrast, practice and procedure pertain to the essentially mechanical operations of the courts by which substantive law, rights, and remedies are effectuated.

*Floyd v. Board of Commissioners of Bonneville County,* 131 Idaho 234, 238, 953 P.2d 984, 988 (1998) (quoting *State v. Currington,* 108 Idaho 539, 541, 700 P.2d 942, 944 (1985)).

Damages and punishments are substantive law. The district court properly applied Oregon law in determining not to allow amendment of the complaint.

## III.

### THE DISTRICT COURT DID NOT ERR IN ALLOWING TROY BRITTON TO TESTIFY

■ The Grovers argue that Troy Britton, a CRNA, was not qualified to give expert testimony because he had not administered anesthesia in an office setting. Britton was licensed as a CRNA in three states and had practiced for nearly twenty years. He had administered anesthesia with dentists before. He acknowledged that he had not administered anesthesia in an oral surgeon's office, but he testified that where anesthesia is administered does not affect the standard of care.

■ The foundational requirements for expert testimony are set forth in Idaho Rule of Evidence 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Whether a witness is qualified as an expert is reviewed for an abuse of discretion. *Lunders v. Estate of R. Snyder,* 131 Idaho 689, 697–98, 963 P.2d 372, 380–81 (1998).

Regarding I.R.E. 702, an expert must be qualified by "knowledge, skill, experience, training, or education." Britton was qualified as an expert under I.R.E. 702 because of his experience of being a CRNA for nearly twenty years.

The Grovers also argue that I.C. §§ 6–1012–1013 should have governed the admission of Britton's testimony. These statutes define the standard of care in Idaho. Idaho Code § 6–1012, entitled "Proof of community standard of health care practice in malpractice case," states that in any malpractice case, a plaintiff must "affirmatively prove by direct expert testimony and by a preponderance of all the competent evidence, that such defendant then and there negligently failed to meet the applicable standard of care ..." and that "such individual providers of health care shall be judged in such cases in compar-

ison with similarly trained and qualified providers of the same class in the same community, taking into account his or her training, experience, and fields of medical specialization, if any." This statute requires proof of the standard of care and that the standard of care is to be determined by reference to the community standard. This is not a procedural statute. It defines a societal norm—the standard of care.

I.C. § 6–1013 is titled "Testimony of expert witness on community standard." It states that the standard of care must be established by expert testimony, and that the expert's opinion be "actually held by the expert witness," that the opinion can be testified to "with reasonable medical certainty" and that the witness possess "professional knowledge and expertise coupled with actual knowledge of the applicable said community standard."

■ I.C. § 6–1013 lays out how an expert may become knowledgeable about the standard of care. While I.C. § 6–1012 defines the standard of care, I.C. § 6–1013 sets forth foundational requirements about how it is to be proved and what type of knowledge the expert needs to have. Even if Idaho Law were applied, Britton was qualified to testify as an expert regarding the standard of care for a CRNA. He was licensed as a CRNA, had administered anesthesia before, and had done so for dentists. He was aware of the standard of care. The district court did not abuse its discretion in allowing Britton to testify under either Oregon or Idaho Law.

### IV.

### THE DISTRICT COURT DID NOT ERR BY REFUSING TO ADMIT THE RECORDS OF THE OREGON STATE DENTAL BOARD

■ The district court ruled that records of the Oregon Board of Dentistry were privileged under Oregon law. The statute reads in relevant part that:

(5) A health professional regulatory board record or order, or any part thereof, obtained as part of or resulting from an investigation, contested case pro-

ceeding, consent order or stipulated agreement, is not admissible as evidence and may not preclude an issue or claim in any civil proceeding except in a proceeding between the board and the licensee or application as otherwise allowed by law.

O.R.S. § 676.175.

The Grovers argue that the district court should have applied Idaho law because this is an issue of procedural law rather than substantive law. They claim the records would not be privileged under Idaho law.

Regardless of whether Oregon or Idaho law is applied the records are exempt from disclosure. I.C. § 9–340(15), in effect at the time the lawsuit was filed, stated that "unless otherwise provided by agency rule, information obtained as part of an inquiry into a person's fitness to be granted or retain a license" is exempt.[1] The Grovers have cited no agency rule that allows for disclosure, and the Court has not found such a rule. I.C. § 9–340(15) exempted professional discipline records from disclosure, as did Oregon Law.

### V.

### THE DISTRICT COURT DID NOT ERR IN ALLOWING DR. REEDY TO TESTIFY

■ The Grovers argue that Dr. Reedy, a defense expert who was Grover's neurosurgeon at the time of her brain surgery following the stroke, should not have been allowed to testify because he was not disclosed as an expert in the time allowed for discovery. This was part of their motion for a new trial pursuant to IRCP 59(a)(3) which requires a showing of "accident or surprise, which ordinary prudence could have not guarded against."

■ The grant or denial of a motion for a new trial is reviewed for an abuse of discretion. *Highland Enters., Inc. v. Barker,* 133 Idaho 330, 342, 986 P.2d 996, 1008 (1999).

The discovery cut-off date in this case was June 1, 1999. Dr. Reedy was disclosed as an expert witness on June 2, 1999. While this

---

1. This statute has been amended several times and is now codified in I.C. § 9–340C (9).

was one day after the cut-off date, it was over two months before the trial began. The defendants had disclosed Dr. Reedy as a potential witness before the June 1 cut-off date—on April 12, 1999, it was disclosed that Dr. Reedy was a possible witness and might testify as to causation. The Grovers deposed Dr. Reedy in January of 1999.

It is true that Dr. Reedy was disclosed as an expert witness one day after the discovery cut-off date, but the Grovers cannot claim that they were surprised by his testimony. They knew for over two months that Dr. Reedy was an expert witness, that he might testify as to causation, and they had deposed him earlier that year. The Grovers, in the exercise of ordinary prudence, should have been prepared for Dr. Reedy's testimony. The district court did not abuse its discretion in allowing Dr. Reedy to testify and in denying the motion for new trial.

## VI.

## THE DISTRICT COURT DID NOT ERR IN DENYING THE GROVERS' MOTION FOR NEW TRIAL BASED UPON THE CLAIM OF MISCONDUCT BY COUNSEL

The Grovers argue that statements of Isom's attorney, made during closing arguments, warrant a new trial. This is reviewed for an abuse of discretion. *Highland Enters., Inc. v. Barker*, 133 Idaho 330, 342, 986 P.2d 996, 1008 (1999). They claim that this is an "irregularity" under IRCP 59(a)(1) which states that a new trial may be granted for "irregularity in the proceedings of the court, jury or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial." The Grovers claim that Isom's attorney created an "irregularity" by trivializing the Board of Dentistry's actions against Isom.

The district court had granted Isom's motion in limine regarding the Oregon Board of Dentistry's actions again Isom. During closing arguments, Isom's attorney stated that if there was anything "relevant" about his history, the jury "would have heard about it." The district court noted that during trial, the Grovers attorney attempted to insinuate the Board's actions into the trial, while the defendants' attorneys tried to insinuate their absence.

The district court did not abuse its discretion in denying a new trial as a consequence of the insinuating of counsel. The jury found that Isom violated the standard of care. Isom's attorney's statements apparently had no effect on the jury. The jury found that Isom's breach did not cause Grover's stroke. The insinuations of counsel are not sufficient to grant a new trial.

## VII.

## NO ERROR IN INSTRUCTIONS HAS BEEN SHOWN

The Grovers argue that three of the district court's jury instructions did not accurately reflect Idaho law. These instructions were apparently based on Oregon substantive law, which was correctly applied. Therefore, failing to instruct on Idaho law did not constitute error.

In any event, the three instructions that were objected to are not a part of the augmented record. They were denied by order of this Court on January 23, 2001, because they did not contain a date stamp. The Grovers acknowledge that these instructions are not part of the record, and therefore "must remain silent on those submitted instructions." No error has been shown.

## VIII.

## THE FACT THE GROVERS DID NOT CHALLENGE THE JURY'S FINDING THAT MRS. GROVER WAS 100% RESPONSIBLE FOR HER OWN INJURIES DOES NOT REQUIRE DISMISSAL OF THE APPEAL

The respondents argue that the Grovers do not challenge the jury's finding that Mrs. Grover was responsible for her own injuries, and, therefore, her appeal must fail under *MacLeod v. Reed*, 126 Idaho 669, 889 P.2d 103 (Ct.App.1995) and *Leydet v. City of Mountain Home*, 119 Idaho 1041, 812 P.2d

755 (Ct.App.1991). The respondents maintain that even if the Grovers are correct with regard to her issues on appeal, that the jury's finding is an independent basis for affirming the district court.

 It is clear, however, that the Grovers are arguing that if Idaho law were applied and certain witnesses excluded, that the jury's finding and the award would be different. They argue that many legal issues were wrongly determined by the district court and that this would affect the jury's finding. As the district court noted, "the jury accepted the testimony of the Defendant's medical experts on the issue of causation ... and they believed the surgery and the stroke to be coincidental." The Grovers are challenging the expert testimony of Dr. Reedy on the issue of causation, and are arguing that the jury's verdict would not be sustained if the jury had known of Isom's discipline by the Oregon Board of Dentistry. The Grovers assert that the jury's finding is based on evidence that should not have been in the record and that the jury should have heard evidence that was not in the record. Dismissal of the appeal for failing to expressly challenge the findings that Mrs. Grover was 100% responsible for her injuries would be improper.

## IX.

## CONCLUSION

The decision of the district court is affirmed. The respondents are awarded costs. No attorney fees are allowed.

Chief Justice TROUT, Justices WALTERS, KIDWELL and EISMANN concur.