**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 34765**

| | | |
|---|---|---|
| MIRIAM G. CARROLL, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MBNA AMERICA BANK, | ) | Boise, November 2009 Term |
| | ) | |
| Defendant-Respondent. | ) | 2009 Opinion No. 140 |
| ----------------------------------------------------------- | ) | |
| MBNA AMERICA BANK, | ) | Filed: November 25, 2009 |
| | ) | |
| Plaintiff-Respondent, | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID F. CAPPS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District of the State of Idaho, Idaho County. Hon. John H. Bradbury, District Judge.

The judgment of the district court is <u>affirmed</u>.

Miriam G. Carroll and David F. Capps, Kamiah, appellants pro se.

Wilson & McColl, Boise, for respondents. Alec T. Pechota argued.

———————————

J. JONES, Justice.

This is an appeal from the district court's confirmation of, and entry of judgment upon, arbitration awards against Miriam Carroll and David Capps in favor of MBNA America Bank. We affirm.

1

# I.
## Factual and Procedural Summary

In December 2004, Capps and Carroll each mailed a letter[1] to MBNA, alleging that there was an error in their most recently received billing statements. Capps disputed a debt of over $21,000 and Carroll disputed a debt of over $24,000. MBNA did not respond to the letters or to subsequent letters wherein Capps and Carroll claimed MBNA had improperly made adverse credit report filings against them and demanded that it follow federal procedures for resolving billing and reporting disputes. Instead, MBNA filed separate arbitration proceedings against Capps and Carroll with the National Arbitration Forum (NAF).

In April 2005, the NAF received a letter from Carroll, urging that the arbitration be dismissed because her agreement with MBNA did not contain an arbitration provision and she did not receive notice of an amendment to the agreement, meaning that the NAF lacked jurisdiction to arbitrate. Capps sent a similar letter to the NAF in July 2005. On August 3, 2005, the NAF issued a decision, acknowledging that it may lack jurisdiction and requesting evidence

---

[1] Each letter stated:

> I am writing regarding the above account. I believe that my most recent statement . . . is inaccurate.
>
> I am disputing the above amount because I believe that you failed to credit my account for prepayments you agreed to credit . . . . It was my understanding that when I entered into the agreement with you that you would accept my signed note(s) or other similar instrument(s) as money, credit or payment for previous account transactions, and then reflect those credits in the [December] statement . . . . They do not appear in the statement and I am wondering why. The amount of the credits on the prepayments of money or credit accepted by you should be the approximate amount that I list above [referring to the total balance due on the last statement received by the debtor]. I am making this billing inquiry because I am uncertain of all the dates of the prepaid credits and also because there may be additional credits that I am entitled to. Please provide me with a written explanation why these credits are not showing. . . .
>
> I am requesting that you provide me with an acknowledgment of this billing error and complete a full investigation by sending me a written explanation report related to the subject matter of this billing error. . . .
>
> I am also requesting additional documentary evidence of indebtedness of the account charges, which includes copies of the account charges and entries that made you arrive at the recent balance shown on my statement. . . .
>
> I am exercising my right to withhold the disputed amount until you comply. . . .

on the issue of jurisdiction. Subsequently, the arbitrator found that the NAF did have jurisdiction and issued an award against Carroll for $30,241.41. A different arbitrator made the same finding against Capps and issued an award against him for $28,156.49.

On September 30, 2005, Carroll filed a complaint against MBNA in the Idaho County District Court, alleging violations of the Truth in Lending Act, breach of contract and violation of rights, and seeking injunctive relief to invalidate the arbitration award against her. MBNA filed a collection suit against Capps, who answered, alleging the same claims and seeking the same relief as Carroll. MBNA moved for summary judgment on all claims asserted by Capps and Carroll and the cases were consolidated for hearing. The district court denied MBNA's motions for summary judgment, finding that MBNA's answers to requests for admissions concerning the billing dispute letters sent by Capps and Carroll were inconsistent and that it had failed to produce agreements that provided for arbitration between the parties. The court held that these issues created questions of fact precluding summary judgment.

The district court subsequently heard Capps' and Carroll's motions for injunctive relief, following an evidentiary hearing on the applicability of the arbitration clauses. On September 14, 2006, the district court issued an opinion on Capps' and Carroll's claims for injunctive relief, treating them as motions to vacate the arbitration awards. The court found that Delaware law applied to the agreements, the agreements allowed unilateral modification with implied acceptance, and the agreements had been properly modified to include arbitration clauses. On that basis, the district court confirmed the arbitration awards of $28,156.49 against Capps and $30,241.41 against Carroll.

Capps and Carroll moved for reconsideration, arguing for the first time that MBNA's claim was fraudulent, the arbitrators did not have jurisdiction to issue the awards, the NAF was biased in favor of MBNA, the arbitrations were unconscionable because of bias on the part of arbitrators, the arbitration agreements were illusory and deceptive, the application of Delaware law was precluded by the Idaho Credit Code (ICC), and the district court should reopen discovery on the issue of MBNA's standing to collect the debts. The district court denied the motions for reconsideration, finding that Capps and Carroll failed to present any new factual or legal arguments that would warrant overturning the arbitration awards, and that their request to reopen discovery was not timely. Capps and Carroll timely appealed to this Court.

3

## II.
## Issues on Appeal

The following issues are presented on appeal: (1) whether the agreements between the parties are controlled by Delaware law; (2) whether the district court's finding of valid agreements to arbitrate is supported by substantial, competent evidence; and (3) whether MBNA is entitled to attorney fees on appeal.

## A.
## Standard of Review

Choice-of-law analysis and the determination of the law governing a case are questions of law over which this Court exercises free review. *Grover v. Isom*, 137 Idaho 770, 772, 53 P.3d 821, 823 (2002). Review of a district court's decision to vacate or modify an arbitration award uses the same standard as that used by the district court. *Moore v. Omnicare, Inc.*, 141 Idaho 809, 814, 118 P.3d 141, 146 (2005). Review of an arbitration award is limited to determining whether any of the grounds for relief stated in Idaho Code section 7-912 exist.[2] *Id.* Under the Uniform Arbitration Act (UAA), as adopted in Idaho, a district court may only vacate an arbitrator's award where:

> (1) The award was procured by corruption, fraud or other undue means;
>
> (2) There was evident partiality by an arbitrator appointed as a neutral, or corruption in any of the arbitrators, or misconduct prejudicing the rights of any party;
>
> (3) The arbitrators exceeded their powers;
>
> (4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to

---

[2] We should note, as we did in *Barbee v. WMA Securities, Inc.*, that the statute applicable to this matter is most likely the Federal Arbitration Act (FAA), 9 U.S.C. § 1, et seq., because the contracts in question involve interstate commerce. 143 Idaho 391, 396 n.4, 146 P.3d 657, 662 n.4 (2006). However, given the similarity of the review under the FAA and the UAA, Idaho law can still be applied, particularly because the parties have only made passing mention of the applicability of the FAA. *Id.* (noting that where an issue is not raised by the parties, it need not be addressed on appeal). Further, the only difference in the standard of review between the FAA and UAA is that an FAA award can be overturned on the basis of the arbitrator's "manifest disregard of the law," "which requires [that] (1) the arbitrators' knew of the governing legal principle and refused to apply it or ignored it altogether, and (2) the governing law was well defined, explicit, and clearly applicable." *Id.* (quoting 9 U.S.C. § 10 (2006)).

the provisions of section 7-905, Idaho Code, as to prejudice substantially the rights of a party; or

(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under section 7-902, Idaho Code, and the party did not participate in the arbitration hearing without raising the objection.

I.C. §§ 7-912(a)(1)–(5). If the district court makes additional findings of fact in confirming or denying the award, they must be supported by substantial and competent evidence. *Moore*, 141 Idaho at 815, 118 P.3d at 147. The district court's findings of fact will not be set aside on appeal unless they are clearly erroneous. *MBNA America Bank, N.A. v. Fouché*, 146 Idaho 1, 3, 189 P.3d 463, 465 (2008).

## B.
### Conflict of Laws

In this case, the agreements between MBNA and Capps and Carroll contain choice-of-law clauses that purport to apply Delaware Law. MBNA is also a national bank, governed by the National Banking Act (NBA), meaning several aspects of its operations are subject to federal law.

The NBA invests nationally chartered banks with powers enumerated in the NBA, as well as all incidental powers necessary to carry out the business of banking. *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007). This federal control shields national banks from duplicative state acts and regulations. *Id.* However, federally chartered banks are subject to state laws of general application in their day-to-day activities, so long as those laws are not inconsistent with the NBA or regulations promulgated under the NBA by the Office of the Comptroller of the Currency. *Id.* Accordingly, in this case, MBNA's activities may be governed by state law where the NBA does not speak on an issue, raising the question of which state's law should apply. MBNA argues that *Watters* automatically mandates the application of Delaware law because MBNA is located in Delaware. However, the analysis is not quite that simple.

In determining the law applicable to a contract, this Court applies the Restatement (Second) of Conflict of Laws. *See Ward v. Puregro*, 128 Idaho 366, 368–69, 913 P.2d 582, 584–85 (1996); *Cerami-Kote, Inc. v. Energywave Corp.,* 116 Idaho 56, 58 n.1, 773 P.2d 1143, 1145 n.1 (1989). The Restatement provides that "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties

could have resolved by an explicit provision in their agreement directed to that issue." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(1) (1971). Even if an issue could not be resolved by an explicit provision in the contract, the chosen law will apply unless:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Id.* §187(2).

In *Cerami-Kote*, this Court applied Florida law after it determined that a substantial relationship existed with the chosen state. 116 Idaho at 58, 773 P.2d at 1145. That relationship was found because the defendants were incorporated in Florida and because the performance of the contract in question would take place, at least in part, in Florida. *Id.* In *Ward*, this Court did not analyze the relationship between the parties and the chosen law; it simply applied California law because one of the parties was a California corporation and the parties had chosen California law to govern their contract. 128 Idaho at 368–69, 913 P.2d at 584–85. The contracts between the parties in this case purport to apply Delaware law. Delaware law has a substantial relationship to the parties and is a reasonable basis for the parties' choice of governing law. Delaware is the place of incorporation and principal place of business of MBNA, and it is also, arguably, the place where the agreements between the parties were executed and performed by MBNA.[3] Thus, there is a relationship between the chosen state law and the parties that supports application of the choice-of-law clauses in the agreements.

The next step in the *Cerami-Kote* analysis is to determine whether the chosen state's law recognizes the choice-of-law clause. 116 Idaho at 58–59, 773 P.2d at 1145–46. "Delaware courts will generally honor a contractually-designated choice of law provision so long as the jurisdiction selected bears some material relationship to the transaction." *J.S. Alberici Constr. Co. v. Mid-West Conveyor Co.*, 750 A.2d 518, 520 (Del. 2000). Because there is a demonstrated

---

[3] *See* RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 195, cmt. d. (1971) (noting that money lent by a bank is considered repayable at the bank itself).

relationship between the transaction and Delaware, Delaware law should apply as long as there is no contrary Idaho public policy.

The Restatement indicates that the key consideration in making a public policy determination is whether some policy of the forum state is contravened by applying the rules of the selected state. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 cmt. e. (1971). In this case, Idaho's public policy is expressed in the ICC. The ICC provides that one of its key purposes is "[t]o protect debtors against unfair practices by some suppliers of credit." I.C. § 28-41-102(2)(c). With regard to regulated credit transactions, such as those involved here, the ICC invalidates an agreement by a debtor that purports to apply the law of another state, unless the debtor was not a resident of this state at the time of the credit transaction. I.C. §§ 28-41-201(1), (7), & (8).

According to the testimony elicited from MBNA's witness, Michael Milnes, during the evidentiary hearing, Capps and Carroll were both residents of this state at the time their accounts were modified. Thus, the ICC would apply to MBNA's modification of their account terms because the proposed modification was sent to parties in this state by mail, triggering the application of the ICC according to section 28-41-201(1)(a). Because the ICC applies to the transactions in question, the choice-of-law clauses provided by MBNA are inapplicable because they are contrary to express statutory law and public policy in Idaho. This is because they apply the law of another state to a covered credit transaction; thus, in absence of an effective choice of law by the parties, analysis of the conflicts between Idaho and Delaware law must be analyzed under section 188 of the Restatement.

Under section 188 of the Restatement, when the laws of two states might potentially apply, the law of the state with the most significant relationship to the contract should apply. *Seubert Excavators, Inc. v. Anderson Logging Co.*, 126 Idaho 648, 651, 889 P.2d 82, 85 (1995) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971)). The most significant relationship is determined under the factors set forth in section 6 of the Restatement[4] according

---

[4] Those factors are:

> (a) the needs of the interstate and international systems,

> (b) the relevant policies of the forum,

> (c) the relevant policies of other interested states and the relative interests of

to the following contacts: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties." *Id.* (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971)). Additionally, "because parties to a contract are likely to give advance thought to the legal consequences of their actions, the policies of protecting justified expectations and increasing predictability and uniformity of result take on greater importance in contract cases." *Id.* at 652, 889 P.2d at 86. Furthermore, the Restatement specifically provides for contracts involving the repayment of money, noting that the validity of those contracts and rights under them are usually determined by the local law of the state where repayment is to be made unless some other state has a more significant relationship. RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 188(3), 195 (1971). The Restatement also indicates that where the lender is a bank, the place of repayment and the place with the most significant relationship to the contract will be the state where the bank is located. *Id.* § 195, cmt. d.

In this case, we find that Delaware law has the most significant relationship to the agreements. Despite the fact that Capps and Carroll are domiciled in Idaho, and MBNA has advertised and solicited business within the state of Idaho, the contacts with Idaho end there. Under the Restatement theory, repayment was to be made where MBNA was located, in Delaware. MBNA is also incorporated and has its principal place of business in Delaware. Finally, the formulation of the terms and conditions of the agreements took place in Delaware under the assumption that they would be governed by Delaware law.

The application of the section 6 policies also favors the application of Delaware law. As noted above, the policies of the forum are opposed to application of the laws of another state to a credit transaction in this state, meaning that Idaho law should apply under that consideration;

---

those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971).

8

however, all other considerations support the application of Delaware law. The needs of interstate and international systems would implicate application of Delaware law because the parties originally attempted to form the agreements under Delaware law, as indicated by the inclusion of the choice-of-law clauses. As for the policies of Delaware, as shown by Delaware case law, Delaware would apply the law that was in the contemplation of the parties when the agreements were formed, meaning that Delaware law should apply. *See, e.g.*, *J.S. Alberici Constr. Co.*, 750 A.2d at 520 (noting that Delaware will give effect to the parties' choice of law). The protection of expectations, the policies in the legal field, certainty, and ease of application also favor application of Delaware law. Application of Delaware law would fulfill these policies because the parties formed the agreements with the expectation that Delaware law would apply. Further, the policies of the field of law favor giving effect to party intent, and application of the chosen law advances certainty and ease of application because a contacts analysis, such as this one, would not need to be undertaken if the policy of the forum had allowed application of the choice-of-law clauses. Finally, given the factors above, the presumption that the place of payment has the most significant relationship under section 195 applies in this case. Accordingly, Delaware has the most significant relationship to the parties' agreements and Delaware law should apply.

Finally, despite the application of Delaware law to substantive issues, Idaho law applies to all procedural matters in this action. Even where a court is applying the laws of another state, the procedural law of the forum court will still apply. *See Houston v. Whittier*, 147 Idaho 900, 911–12, 216 P.3d 1272, 1283–84 (2009) (quoting 16 AM. JUR. 2D *Conflict of Laws* § 6 (1998)); RESTATEMENT (SECOND) CONFLICT OF LAWS § 122 (1971). The Restatement notes that procedural matters to which forum law will be applied include forms of action, pleading and conduct of proceedings before the court, allocation of burdens of proof, and admissibility and sufficiency of evidence. *See* RESTATEMENT (SECOND) CONFLICT OF LAWS §§ 124, 127, 133–35, & 138 (1971). Thus, Idaho law applies to all procedural matters.

## C.
### Arbitration Agreement

Capps and Carroll argue that the arbitrators' awards should be vacated because there were no agreements to arbitrate, robbing the arbitrators of jurisdiction and providing grounds to vacate the awards under Idaho Code section 7-912(a)(5). MBNA argues that the original

agreements contained provisions that allowed for unilateral amendment of the agreements, and that the unilateral amendment procedures were followed, adding an arbitration clause to both Capps' and Carroll's agreements. MBNA also argues that it is entitled to relief under the applicable Delaware law, even without introduction of the original agreements, because it has the right to unilaterally amend the agreements under Delaware Code, title 5, section 952. Capps and Carroll contend that there is no evidence to support MBNA's unilateral right to amend their agreements and that a unilateral amendment is contrary to Idaho and Delaware law and public policy.

Although Capps and Carroll styled their claims for relief as injunctive in nature, they were motions to vacate arbitration awards pursuant to Idaho Code section 7-912. An action under section 7-912 is to be presented and decided as a motion. I.C. § 7-916. Here, despite the fact that the motion was improperly presented as a complaint for injunctive relief, in any civil case, a mislabeled claim may be treated according to its substance. *See Freeman v. State, Dept. of Corr.*, 115 Idaho 78, 79, 764 P.2d 445, 446 (Ct. App. 1988). Accordingly, we will review the action as a motion to vacate an arbitration award. This Court, upon review of a motion to vacate an arbitration award, is limited to a determination of whether the grounds for vacation provided by statute exist and whether any findings of fact entered by the trial court in reviewing the award are supported by substantial and competent evidence. *Moore*, 141 Idaho at 814, 118 P.3d at 146. The review of arbitration awards is governed by Idaho law because, as noted above, forms of action, burdens of proof, and competency and sufficiency of evidence are matters that are governed by the law of the forum. *See* RESTATEMENT (SECOND) CONFLICT OF LAWS §§ 122, 124, 127, 133–35, & 138 (1971).

We first consider whether the district court correctly found the parties had agreed to arbitrate disputes. MBNA contends that both agreements were properly amended to include arbitration provisions. The evidence in the record indicates that Capps opened his account in February 1999, and that MBNA sent him a document in December 1999 purporting to amend the agreement to include the arbitration provision. Carroll's credit card account was opened in March 1980 with another bank and converted to an MBNA account in July 2000. The evidence shows that MBNA mailed an amendment to Carroll at that time purportedly incorporating the arbitration provision. The question therefore is whether such unilateral amendments are permissible under Delaware law.

10

Title 5, section 952 of the Delaware Code contemplates unilateral amendment of credit agreements between parties; however, it also provides that unilateral amendments cannot be made if the agreements specifically prohibit them.[5] Del. Code Ann., tit. 5, § 952(a) (1999). Consequently, in order to show that the NAF had jurisdiction, MBNA is required to demonstrate that the original agreements between the parties did not contain a restriction on its ability to modify the agreements. Thus, in order for this Court to uphold the district court's finding of valid agreements to arbitrate between the parties in this matter, the record must reflect substantial and competent evidence of a valid agreement for both Capps and Carroll that either does not prohibit unilateral amendments of the agreement or that contains a valid arbitration clause.

A very similar issue was addressed by this Court in *MBNA America Bank, N.A. v. Fouché*; however, *Fouché* is distinguishable from this case based on the evidence presented and the findings made. 146 Idaho 1, 189 P.3d 463. In *Fouché*, MBNA obtained an arbitration award against Fouché and brought an action to have it confirmed in district court. *Id.* at 1–2, 189 P.3d at 463–64. Fouché, appearing pro se, argued that there was no agreement to arbitrate and, consequently, the arbitration award should be vacated. *Id.* at 2, 189 P.3d at 464. After MBNA produced an affidavit of one of its assistant vice-presidents that purported to contain a true and correct copy of the cardholder agreement for Fouché's account, and presented testimony from a different vice-president that Fouché's agreement was modified to allow for arbitration, the district court confirmed the award and entered judgment for MBNA. *Id.*

Although there was also testimony in the record from MBNA's witness that it had complied with the amendment procedures to add an arbitration clause, this Court held that the district court's confirmation of the arbitration award was not supported by substantial and competent evidence because "[t]here was no evidence admitted during trial that supported the finding that MBNA had the right to change the agreement." *Id.* at 4, 189 P.3d at 466. We reached that result because, although some of the agreements between the parties were offered as part of an affidavit early in the proceedings, they were never offered as exhibits at trial. *Id.* We noted

___

[5] The relevant portion of the statute provides:

> *Unless the agreement governing a revolving credit plan otherwise expressly provides*, any amendment may, on and after the date upon which it becomes effective as to a particular borrower, apply to all then outstanding unpaid indebtedness in the borrower's account under the plan . . . .

Del. Code. Ann., tit. 5, § 952(a) (emphasis added).

that in order to establish an agreement to arbitrate, based on a modification that was supported by substantial and competent evidence, the district court must find, as an established fact, that the cardholder agreement included a provision permitting MBNA to modify its terms. *Id.* at 4, 189 P.3d at 466. We also found that MBNA had failed to establish that Delaware law applied to the agreement with Fouché. *Id.*

This case differs from *Fouché* because MBNA has placed sufficient evidence in the record to allow a finding of an agreement to arbitrate and the district court made such a finding. MBNA relied on the testimony of one of its vice-presidents, Michael Milnes, who identified exhibits entered into the record as the amended agreements between MBNA and Carroll and Capps. These exhibits contained agreements to arbitrate, as well as provisions allowing for amendment of the cardholder agreements by MBNA. Further, MBNA pointed to applicable provisions of Delaware law, specifically, title 5, section 952, that empowered MBNA to unilaterally amend the agreements between the parties. Finally, the district judge made an explicit finding that both Capps and Carroll had an agreement to arbitrate with MBNA, based on the evidence in the record. Consequently, we find that, unlike the record presented in *Fouché*, the record in this case adequately establishes MBNA's ability to modify the agreements between the parties, as well as the fact that the agreements had in fact been amended to provide for arbitration.

Carroll's and Capps' other arguments against confirmation of the arbitration award are unavailing. While a showing that the agreement to arbitrate itself was unconscionable or that the arbitrator was influenced by bias or prejudice would be sufficient to allow a court to set aside an arbitration award, those arguments were not raised or argued in front of the district court, nor was any evidence presented to support them. While Carroll and Capps did argue on reconsideration that the arbitration process itself was unconscionable because of arbitrator bias, that is not a basis for vacating the awards. The district court found that, although Capps and Carroll submitted affidavit and deposition testimony that NAF arbitrations were biased in favor of the banking industry, they presented no evidence that the arbitrators presiding in their arbitrations were biased. Neither Capps nor Carroll has demonstrated why the district court's findings should be disturbed. The other arguments raised by Carroll and Capps, including lack of mutuality of obligation or a meeting of the minds, simply go back to the existence of an

agreement to arbitrate, which, as we noted above, was found as an established fact supported by substantial and competent evidence.

Accordingly, because the district court found agreements to arbitrate between the parties as an established fact, and Capps and Carroll have failed to show any grounds for setting aside the arbitration awards entered under those agreements, the district court's confirmation of the arbitration awards against Capps and Carroll was proper.

## D.
## Attorney Fees

MBNA claims that it is entitled to attorney fees on appeal pursuant to Idaho Code sections 12-120(3) and 12-121.[6] When a choice-of-law clause is in play, this Court must determine whether the award of attorney fees is procedural or substantive in order to establish which state's law applies. *Houston*, 147 Idaho at 911–12, 216 P.3d at 1283–84. If the award of attorney fees is a discretionary matter governed by statute, then it is considered to be procedural, requiring application of the forum law. *Id.* at 911, 216 P.3d at 1283. Further, in order to be entitled to attorney fees on appeal, authority and argument establishing a right to fees must be presented in the first brief filed by a party with this Court. Idaho App. R. 36(b)(5), 41; *Goldman v. Graham*, 139 Idaho 945, 947–48, 88 P.3d 764, 766–67 (2004). A citation to statutes and rules authorizing fees, without more, is insufficient. *Goldman*, 139 Idaho at 947–48, 88 P.3d at 766–67. Although MBNA cited to the above statutory fees provisions, it submitted no argument in its brief as to why fees should be awarded under either I.C. § 12-120(3) or I.C. § 12-121. Thus, we decline to award attorneys fees to MBNA on appeal.

## III.

Because the district court's findings concerning the arbitration awards against Capps and Carroll are supported by substantial and competent evidence, we affirm the district court's order confirming the awards and the judgment entered thereon. We award costs on appeal, but not attorney fees, to MBNA.

Chief Justice EISMANN, and Justices BURDICK, W. JONES and HORTON CONCUR.

---

[6] MBNA does not base its request for attorney fees on the provisions of the agreements between the parties, and, therefore, we do not consider whether fees may have been awardable under the agreements.