**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 35287-2008**

| | | |
|---|---|---|
| HOWARD HOUSTON, | ) | |
| | ) | **Boise, June 2009 Term** |
| Plaintiff-Respondent, | ) | |
| | ) | **2009 Opinion No. 102** |
| v. | ) | |
| | ) | **Filed: August 21, 2009** |
| JOHN HUNTING WHITTIER, | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, in and for Blaine County.  The Hon. Robert J. Elgee, District Judge.

The judgment of the district court is affirmed.

Elam & Burke, P.A., Boise, for appellant.  Jeffrey A. Thomson argued.

Ned Williamson, Hailey, and The Banks Law Office, P.C., Portland, Oregon, for respondent.  Robert S. Banks, Jr., argued.

_____

EISMANN, Chief Justice.

This is an appeal from a judgment on causes of action based upon Oregon statutes.  We hold that the most significant relationship test applicable to a conflict of laws issue does not apply and that the district court did not err in allowing recovery based upon the Oregon statutes.  We also hold that the district court did not err in granting summary judgment on those claims.  We affirm the judgment of the district court, but do not award attorney fees on appeal.

## I.  FACTS AND PROCEDURAL HISTORY

From February 2003 through the Fall of 2005, John Hunting Whittier (Defendant) was a general partner in Wood River Partners, L.P. (Wood River), a limited partnership, and the managing member of Wood River Associates, LLC, a limited liability company that was the general partner of Wood River.  Wood River was a hedge fund with an office in Ketchum, Idaho.

Howard Houston (Plaintiff) was a resident of Oregon.  In latter 2004, Plaintiff and his employee Peter Shames received documents in Oregon soliciting an investment in Wood River.

Based upon Defendant's representations, Plaintiff made eight monthly investments in Wood River totaling $2,750,000 during the period from February through September 2005.

In late September 2005, the United States Securities and Exchange Commission (SEC) began an investigation of Defendant and Wood River. It later filed a lawsuit against Defendant and the Wood River entities in federal district court in New York. In October, Defendant and the Wood River entities consented to a preliminary injunction enjoining them from violating federal securities laws, freezing their assets, ordering an accounting, preserving evidence, and appointing a receiver from the Wood River entities.

On August 30, 2006, Plaintiff filed this action against Defendant and a law firm. The claims against the law firm were later dismissed with prejudice. The complaint alleged five causes of action against Defendant, the first two of which alleged violations of Oregon law. Defendant answered, asserting his Fifth Amendment right to remain silent.

On February 1, 2007, Defendant was indicted in federal court in New York for four counts of securities fraud. On May 30, 2007, he pled guilty to three of the counts, all of which related to his conduct in managing Wood River.

On October 30, 2007, Plaintiff moved for partial summary judgment on the first two counts of the complaint alleging violations of Oregon law. The motion was based upon a declaration of Plaintiff's counsel and Plaintiff's affidavit. In response, Defendant contended that only Idaho law, not Oregon law, should apply to this case. To counter that argument, Plaintiff submitted the declaration of his employee Shames. In that declaration, Shames stated that the initial solicitation to invest in Wood River had been received by him in Oregon for consideration by Plaintiff; that Wood River representatives sent additional information to Plaintiff via Shames in Oregon; that Plaintiff was also in Oregon at those times; and that when Plaintiff decided to make the eight investments in Wood River, Shames wired the money from Oregon to Wood River's bank in Idaho. Defendant moved to strike Shame's declaration because it did not constitute an affidavit. The declaration lacked a jurat, which is necessary in order for it to constitute an affidavit. *Grandview State Bank v. Torrance*, 38 Idaho 388, 393, 221 P. 145, 146 (1923). Plaintiff responded by filing an affidavit of Shames that was identical to his declaration, except that it included the required jurat and notary seal.

The motion for partial summary judgment was argued on January 28, 2008. Defendant moved to strike the Shames affidavit and Plaintiff's reply memorandum on the ground that they

2

were untimely. He also objected to statements in the Shames affidavit on the ground that they were hearsay. The district court refused to strike the Shames affidavit or the reply memorandum, but it gave Defendant fourteen days to file an affidavit in response to the Shames affidavit. The parties argued some issues raised on the motion for partial summary judgment, and continued the hearing to consider the application of Oregon law.

On February 1, 2008, the district court entered an order setting forth the material facts that were not in dispute and stating that if Oregon law applied Plaintiff would be entitled to summary judgment on his first and second claims for relief. The parties argued the applicability of Oregon law on February 27, 2008. At the conclusion of that argument, the court stated that Oregon law would apply to the first two claims for relief and that summary judgment was appropriate. The court also gave Defendant additional time to raise any objections to the amount Plaintiff claimed was owing.

On March 19, 2008, the court entered an order holding that Plaintiff was entitled to the entry of judgment against Defendant on the first two counts of the complaint. Based upon that holding, the court also granted Plaintiff's motion to dismiss the remaining counts of the complaint. Final judgment was entered on that date, and Defendant timely appealed.

## II. ISSUES ON APPEAL

1. Did the district court err in permitting the late filing of the Shames affidavit and the reply memorandum.

2. Did the district court err in failing to strike portions of the Shames affidavit on the ground that they were inadmissible hearsay?

3. Did the district court err in applying collateral estoppel based upon Defendant's guilty plea in the federal prosecution?

4. Did the district court err in holding that Plaintiff could assert claims based upon Oregon law?

5. Did the district court err in entering a judgment for damages?

6. Is Plaintiff entitled to an award of attorney fees on appeal?

## III. ANALYSIS

**A. Did the District Court Err in Permitting the Late Filing of the Shames Affidavit and the Reply Memorandum?**

Plaintiff served his motion for partial summary judgment on October 30, 2007. He based the motion on his own affidavit and upon the declaration of his attorney to which were attached various documents including a copy of the stipulated order in the SEC action against Defendant, a copy of the federal indictment filed against Defendant, and a copy of the transcript of Defendant's guilty plea in the federal criminal action. The hearing on the motion for summary judgment was scheduled for January 28, 2008. The motion sought partial summary judgment on the first two claims in Plaintiff's complaint, which alleged Oregon statutory causes of action.

On January 14, 2008, Plaintiff received Defendant's response asserting that Oregon law did not apply to this action. To counter that argument, Plaintiff served the declaration of Shames setting forth facts regarding the application of Oregon law. The declaration and Plaintiff's reply memorandum were served by Federal Express overnight delivery so that they were received by Defendant five days before the hearing. Defendant promptly filed a motion to strike the Shames declaration on the ground that it was not an affidavit because it lacked a jurat. On the day of the hearing, Plaintiff provided Defendant with a copy of the Shames affidavit, which was identical to the Shames declaration except that it included the required jurat and notary signature.

The district court refused to strike the Shames affidavit as being served untimely, but stated that it would give Defendant time to file an affidavit to rebut it and would set a time for re-argument if necessary. The court asked Defendant's counsel how much time he would need to submit an affidavit responding to the Shames affidavit. Defendant's counsel answered, "Your Honor, I think that's all a very practical way to approach all this, so I think 14 days to the extent that I find it necessary to respond would be sufficient." Because Defendant's counsel agreed to the procedure suggested by the district court, he cannot challenge that procedure on appeal. *Vega v. Neibaur*, 127 Idaho 606, 608, 903 P.2d 1303, 1305 (1995) (where a party agrees to the manner in which his rights will be submitted for determination in the trial court, he cannot complain on appeal that such procedure was erroneous).

Defendant also contends that the district court erred in failing to strike Plaintiff's reply memorandum. Rule 56(c) of the Idaho Rules of Civil Procedure requires that the party moving for summary judgment serve a reply brief "not less than 7 days before the date of the hearing." Defendant asserts that the reply memorandum was "served on Whittier by Federal Express overnight mail on January 22, 2008, and therefore [was] not received by Whittier until January 23, 2008." Thus, Defendants asserts that the reply memorandum should be stricken because it

was served one day late.[1]  In denying the motion to strike, the district court stated the practical effect of the motion to strike, "[I]f I strike it, it's really the Court saying, well, I don't want to know what the law is or let's ignore the filing of the reply brief and have counsel stand here for an hour or two and read it to me."  The issue of the applicability of Oregon law was argued almost one month later on February 27, 2008.  Defendant has not argued any prejudice from the late service of the memorandum.  "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."  I.R.C.P. 61.  Absent any prejudice, we need not address whether the district court abused its discretion in refusing to strike the reply memorandum on the ground that it was served one day late. *Vendelin v. Costco Wholesale Corp.*, 140 Idaho 416, 426, 95 P.3d 34, 44 (2004).

**B.  Did the District Court Err in Failing to Strike Portions of the Shames Affidavit on the Ground that They Were Inadmissible Hearsay?**

Defendant objected to certain statements in the Shames affidavit on the ground that they were inadmissible hearsay.  The portions of the Shames affidavit at issue are paragraphs 2 and 3 which are as follows:

> 2. I have reviewed the Affidavit of Howard Houston in Support of Plaintiff's Motion for Partial Summary Judgment, and know the facts stated there regarding his purchase of the Wood River Partners investment to be accurate.  I was the one who received the original solicitation of the Wood River investment on Mr. Houston's behalf.  The original solicitation for Mr. Houston to invest in Wood River was directed to me in Hood River, Oregon, in November or December, 2004, for forwarding to Mr. Houston.  Wood River representatives then sent Mr. Houston additional information about Wood River, and directed those communications to me in Oregon.  Mr. Houston was also in Oregon during those times.
> 3. Mr. Houston made eight different installment investments in Wood River, as described in his Affidavit.  I know this because I participated with him in the decisions to make the investments, and I was responsible for sending the funds to Wood River to purchase each of those investments on Mr. Houston's behalf.  In each instance, Mr. Houston agreed or offered to make the investment from Oregon.  I arranged for Mr. Houston's money to be wired from a bank in

---

[1] Rule 5(b) of the Idaho Rules of Civil Procedure states, "Service by mail is complete upon mailing."  Defendant does not contend that service by "Federal Express overnight mail" is not "service by mail," and so we need not address that issue.

Oregon to Wood River's Bank in Idaho. Also in each instance, confirmation of Mr. Houston's purchases were directed from Wood River to me in Oregon.

With respect to Paragraph 2, Defendant argues, "Specifically, paragraph 2 of the Shames declaration/affidavit purports to be based upon Peter Shames' review of the Affidavit of Howard Houston in support of Plaintiff's Motion for Partial Summary Judgment." Contrary to Defendant's assertion, Shames does not state that the source of his information is Plaintiff's affidavit. Rather, he states that he read Plaintiff's affidavit and "know[s] the facts stated there regarding his purchase of the Wood River Partners investment to be accurate."

With respect to Paragraph 3, Defendant argues, "Similarly, the first sentence of paragraph 3 of the Shames declaration/affidavit states, 'Mr. Houston made eight different installment investments in Wood River, *as described in his affidavit*.'" (Emphasis added by Defendant.) Again, Shames is not stating that his source of information is Plaintiff's affidavit. Rather, he is stating that Plaintiff's recitation of the installment payments in his affidavit is accurate.

Finally, Defendant challenges the third sentence in Paragraph 3 which states, "In each instance, Mr. Houston agreed or offered to make the investment from Oregon." Again, this statement is not hearsay. In context, it is merely a statement as to where Plaintiff was when he told Shames to send in the payments. The district court did not err in failing to strike these portions of the Shames affidavit.

## C. Did the District Court Err in Applying Collateral Estoppel Based Upon Defendant's Guilty Plea in the Federal Prosecution?

Plaintiff argued in support of the motion for summary judgment that collateral estoppel could be applied to hold that Defendant's statements made when pleading guilty in the federal prosecution established liability in this case. Defendant contends on appeal that the district court erred in applying collateral estoppel as requested by Plaintiff.

The record does not reflect that the district court applied the doctrine of collateral estoppel in this case. It did not mention collateral estoppel in its order granting partial summary judgment.[2] Plaintiff's affidavit provided all of the facts necessary to support the motion for partial summary judgment.

---

[2] In its order on the motion for partial summary judgment, the district court wrote as follows:

During the argument on the motion, the district court repeatedly stated that the admissions made by Defendant while pleading guilty in the federal criminal case were important. Those statements were admissible in connection with the motion for partial summary judgment. Absent a record showing that the district court applied collateral estoppel, we need not address this assignment of error.

**D. Did the District Court Err in Holding that Plaintiff Could Assert Claims Based upon Oregon Law?**

Defendant argues that the district court erred in applying Oregon law in this case. According to Defendant, under the "most significant relationship test" adopted by this Court to resolve conflicts of law, the district court should have applied the law of Idaho.

"[T]his Court has opted in favor of applying the most significant relationship test set forth in the Restatement (Second) of Conflict of Laws." *Seubert Excavators, Inc. v. Anderson Logging Co.*, 126 Idaho 648, 651, 889 P.2d 82, 85 (1995). We have applied that test in both tort

---

6. With regard to Plaintiffs Motion for Partial Summary Judgment, the court makes the following findings pursuant to Rule 56(d):

a. Plaintiff purchased interests in the securities called Wood River Partners, LP on the following dates and in the following amounts:

| | |
|---|---|
| February 2005 | $250,000 |
| March, 2005 | $250,000 |
| April, 2005 | $500,000 |
| May, 2005 | $250,000 |
| June, 2005 | $250,000 |
| July, 2005 | $500,000 |
| August, 2005 | $250,000 |
| September, 2005 | $500,000 |
| | |
| TOTAL | $2,750,000 |

b. The sale to plaintiff of his interests in Wood River was made by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. Plaintiff was unaware of the untrue statements and omissions when he made his purchases.

c. During all time periods relevant to this case, defendant John Whittier was a managing partner, director and/or officer of Wood River Partners, LP.

d. If the Court determines that the Oregon Securities Laws apply to the sales to plaintiff, then plaintiff is entitled to summary judgment against defendant John H. Whittier on plaintiff's first and second claims for relief, for violations of ORS 59.135(2) and ORS 59.115(1)(b), both of which make it unlawful to sell securities by means of untrue statements of material fact and omissions to state material facts.

7

and contract actions, although the applicable contracts differ between those two types of actions. *Id*. at 651-52, 889 P.2d at 85-86. Thus, we have said that "the logical first step . . . is to determine whether this dispute is contractual in nature or whether it is based in tort." *Id*. at 652, 889 P.2d at 86. In this case, the first two claims alleged in Plaintiff's complaint were neither contractual in nature nor based in tort. They were causes of action created by statute.

In the first claim, Plaintiff sought to recover based upon ORS 59.135 and 59.137. ORS 59.135 declares it unlawful to engage in certain conduct in connection with the purchase or sale of a security, or the conduct of a securities business, or the giving of certain advice regarding securities for compensation.[3] Plaintiff alleged that Defendant, in connection with the purchase or sale of securities to Plaintiff, had made misrepresentations and omissions which violated subsections (1), (2), and (3) of the statute. ORS 59.137 establishes the damages that can be recovered for a violation of ORS 59.135, provides an affirmative defense, creates joint and several liability and the right of contribution, permits the awarding of attorney fees, and sets forth the statute of limitations for filing the action.[4]

---

[3] ORS 59.135 provides:

> **59.135 Fraud and deceit with respect to securities or securities business.** It is unlawful for any person, directly or indirectly, in connection with the purchase or sale of any security or the conduct of a securities business or for any person who receives any consideration from another person primarily for advising the other person as to the value of securities or their purchase or sale, whether through the issuance of analyses or reports or otherwise:
> (1) To employ any device, scheme or artifice to defraud;
> (2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading;
> (3) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person; or
> (4) To make or file, or cause to be made or filed, to or with the Director of the Department of Consumer and Business Services any statement, report or document which is known to be false in any material respect or matter.

[4] ORS 59.137 provides:

> **59.137 Liability in connection with violation of ORS 59.135; damages; defense; attorney fees; limitations on proceeding.** (1) Any person who violates or materially aids in a violation of ORS 59.135 (1), (2) or (3) is liable to any purchaser or seller of the security for the actual damages caused by the violation, including the amount of any commission, fee or other remuneration paid, together with interest at the rate specified in ORS 82.010 for judgments for the payment of money, unless the person who materially aids in the violation sustains the burden of proof that the person did not know and, in the exercise of reasonable care, could not have known of the existence of the facts on which the liability is based.
> (2) Any person who directly or indirectly controls a person liable under subsection (1) of this section and every partner, limited liability company manager, including a member who is a

In his second claim, Plaintiff sought to recover based upon ORS 59.115, which defines the liability of persons for the sale of, or the successful solicitation to sell, securities in specified circumstances, establishes the damages recoverable, creates joint and several liability and the right of contribution, permits the awarding of attorney fees, and sets forth the statute of limitations for filing the action.[5] In the second claim of his complaint, Plaintiff alleged that he was entitled to recover against Defendant pursuant to subsection (1)(b) of this statute.

---

manager, officer or director or a person occupying a status or performing functions of a person liable under subsection (1) of this section, is jointly and severally liable to the same extent as a person liable under subsection (1) of this section, unless the person who may be liable under this subsection sustains the burden of proof that the person did not know and, in the exercise of reasonable care, could not have known of the existence of the facts on which the liability is based.

(3) Any person held liable under this section is entitled to contribution from those persons jointly and severally liable with that person.

(4) Except as provided in subsection (5) of this section, the court may award reasonable attorney fees to the prevailing party in an action under this section.

(5) The court may not award attorney fees to a prevailing defendant under the provisions of subsection (4) of this section if the action under this section is maintained as a class action pursuant to ORCP 32.

(6) An action or suit may be commenced under this section within the later of:

(a) Three years after the date of the purchase or sale of a security to which the action or suit relates; or

(b) Two years after the person bringing the action or suit discovered or should have discovered the facts on which the action or suit is based.

(7) Failure to commence an action or suit under this section on a timely basis is an affirmative defense.

[5] ORS 59.115 provides:

**59.115 Liability in connection with sale or successful solicitation of sale of securities; recovery by purchaser; limitations on proceeding; attorney fees.** (1) A person is liable as provided in subsection (2) of this section to a purchaser of a security if the person:

(a) Sells or successfully solicits the sale of a security, other than a federal covered security, in violation of the Oregon Securities Law or of any condition, limitation or restriction imposed upon a registration or license under the Oregon Securities Law; or

(b) Sells or successfully solicits the sale of a security in violation of ORS 59.135 (1) or (3) or by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that the person did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.

(2) The purchaser may recover:

(a) Upon tender of the security, the consideration paid for the security, and interest from the date of payment equal to the greater of the rate of interest specified in ORS 82.010 for judgments for the payment of money or the rate provided in the security if the security is an interest-bearing obligation, less any amount received on the security; or

(b) If the purchaser no longer owns the security, damages in the amount that would be recoverable upon a tender, less the value of the security when the purchaser disposed of it and less interest on such value at the rate of interest specified in ORS 82.010 for judgments for the payment of money from the date of disposition.

(3) Every person who directly or indirectly controls a seller liable under subsection (1) of this section, every partner, limited liability company manager, including a member who is a

Because these two causes of action are created by statute, the issue is not choice of law. Rather, it is whether there is a reason not to permit Plaintiff to enforce these Oregon statutory causes of action in Idaho. "On the one hand is the strong unifying principle embodied in the Full Faith and Credit Clause looking toward maximum enforcement in each state of the obligations or rights created or recognized by the statutes of sister states." *Hughes v. Fetter*, 341 U.S. 609, 612 (1951). On the other is the public policy of the forum. *Id.* In this case, allowing Plaintiff to pursue these Oregon statutory causes of action in an Idaho court would not conflict with the public policy of this state. The substantive provisions of Idaho Code §§ 30-14-501, 30-14-502, and 30-14-509 are virtually identical. Therefore, the district court did not err in entertaining these causes of action.

---

manager, officer or director of such seller, every person occupying a similar status or performing similar functions, and every person who participates or materially aids in the sale is also liable jointly and severally with and to the same extent as the seller, unless the nonseller sustains the burden of proof that the nonseller did not know, and, in the exercise of reasonable care, could not have known, of the existence of facts on which the liability is based. Any person held liable under this section shall be entitled to contribution from those jointly and severally liable with that person.

(4) Notwithstanding the provisions of subsection (3) of this section, a person whose sole function in connection with the sale of a security is to provide ministerial functions of escrow, custody or deposit services in accordance with applicable law is liable only if the person participates or materially aids in the sale and the purchaser sustains the burden of proof that the person knew of the existence of facts on which liability is based or that the person's failure to know of the existence of such facts was the result of the person's recklessness or gross negligence.

(5) Any tender specified in this section may be made at any time before entry of judgment.

(6) Except as otherwise provided in this subsection, no action or suit may be commenced under this section more than three years after the sale. An action under this section for a violation of subsection (1)(b) of this section or ORS 59.135 may be commenced within three years after the sale or two years after the person bringing the action discovered or should have discovered the facts on which the action is based, whichever is later. Failure to commence an action on a timely basis is an affirmative defense.

(7) An action may not be commenced under this section solely because an offer was made prior to registration of the securities.

(8) Any person having a right of action against a broker-dealer, state investment adviser or against a salesperson or investment adviser representative acting within the course and scope or apparent course and scope of authority of the salesperson or investment adviser representative, under this section shall have a right of action under the bond or irrevocable letter of credit provided in ORS 59.175.

(9) Subsection (4) of this section shall not limit the liability of any person:

(a) For conduct other than in the circumstances described in subsection (4) of this section; or

(b) Under any other law, including any other provisions of the Oregon Securities Law.

(10) Except as provided in subsection (11) of this section, the court may award reasonable attorney fees to the prevailing party in an action under this section.

10

**E. Did the District Court Err in Entering a Judgment for Damages?**

Defendant contends that the district court erred in entering a judgment for damages because Plaintiff moved for summary judgment only on the issue of liability, not damages.  In his motion for partial summary judgment, Plaintiff stated that he "hereby moves this court for summary judgment on the First and Second Claims against Defendant."  In the prayer of his complaint, Plaintiff asked to recover against Defendant on his first claim for relief "all damages permitted by ORS 59.137, including the amount he invested, $2,750,000, plus interest at 9% per annum from the time of each cash contribution to his Wood River investment until paid."  He asked to recover against Defendant on his second claim for relief "all damages permitted by ORS 59.115(2), including the amount he invested, $2,750,000, plus interest at 9% per annum from the time of each cash contribution to his Wood River investment until paid, plus reasonable attorney fees pursuant to ORS 59.115(10)."  In his affidavit submitted in support of his motion for summary judgment, Plaintiff averred as follows:

> 6.  I made the following investments into Wood River by wiring funds in the amounts indicated to Wood River's bank account at the First Bank of Idaho in Ketchum, Idaho.
>
> | | |
> |---|---|
> | February 2005 | $250,000 |
> | March 2005 | $250,000 |
> | April 2005 | $500,000 |
> | May 2005 | $250,000 |
> | June 2005 | $250,000 |
> | July 2005 | $500,000 |
> | August 2005 | $250,000 |
> | September 2005 | $500,000 |
>
> My total investment in Wood River was $2,750,000.00.  I received confirmations from Wood River that it had received each of the investments that are listed above.

Plaintiff's memorandum in support of his motion for partial summary judgment included a "Statement of Undisputed Facts."  That Statement contained the above list of payments and a declaration that Plaintiff's "total cash investment in Wood River was $2,750,000."  In the argument portion of the memorandum, Plaintiff wrote:  "Plaintiff invested $2,750,000 in Wood

---

(11) The court may not award attorney fees to a prevailing defendant under the provisions of subsection (10) of this section if the action under this section is maintained as a class action pursuant to ORCP 32.

River after receiving documents containing those statements, and progress reports indicating that Wood River was following its stated investment"; "The representations made in the Offering Statement and Confidential Summary were false"; and "Based on those facts, plaintiff is entitled to summary judgment on his first and second claims for relief." Nowhere in his motion or supporting documents did Plaintiff state that he was limiting his motion for partial summary judgment to the issue of liability.

On February 18, 2008, Plaintiff submitted a proposed judgment to the district court and opposing counsel. At the continued hearing on Plaintiff's motion for partial summary judgment held on February 27, 2008, the court and Defendant's counsel discussed Defendant's motion to vacate the hearing because of communication difficulties caused by Defendant's incarceration. The district court stated that Defendant's counsel's primary concern seemed to be that he wanted to discuss with his client the amount of the judgment, and Defendant's counsel agreed. The conversation was as follows:

> THE COURT: And that you want to be able to do that, but – And I'll listen to any comments you want to make, and tell me if I'm wrong.
> It seems that your ability to communicate should not affect the question of whether Oregon law applies. That was not a decision – or that was not an issue that there was to be further testimony or evidence on. It was just to be briefed after the last summary judgment hearing, and I have briefs from both counsel.
> *It seems to me that your primary issue is that you want to be able to communicate with him about amounts that might be owing* and whether the amounts Mr. Banks set forth in his affidavit – and because Mr. Banks is saying, "Judge, this isn't contested as to the amounts we paid to Mr. Whittier, so we want a judgment for these amounts."
> That you want to be able to communicate with your client about those things before the court – if I did determine Oregon law applies, before there's any judgment entered. Is that a fair statement?
> MR. THOMSON: Judge, I think that's a very fair statement. I think the only – the primary reason I want to speak to my client is related to the judgment. Mr. Banks has proposed that the judgment be dealt with at today's hearing, and I would like to have additional time with respect to that issue should you determine that Oregon law applies. (Emphasis added.)

After ruling that Oregon law applied and Plaintiff was entitled to summary judgment, the district court stated, "Now, I'll give you time, Mr. Thomson, to confer with your client as far as raising those issues, the amount of the judgment, those things." Defendant's counsel did not respond by asserting that the motion for summary judgment was limited to the issue of liability. Instead, he stated that he thought he could talk by telephone with his client on March 4, 2008,

12

and would like until March 12, 2008, to file "whatever additional information we may need to file." After the hearing, Defendant did not submit any affidavit or sworn testimony challenging the amount of the judgment. On March 12, 2008, Defendant filed an objection to the proposed judgment raising for the first time the argument that the motion for summary judgment only addressed the issue of liability.

The record does not support the argument that Plaintiff moved for partial summary judgment only on the issue of liability. It likewise does not support the contention that when responding to the motion, Defendant thought Plaintiff had only moved for partial summary judgment on the issue of liability.

Defendant also argues that under Oregon law Plaintiff could not obtain a judgment for damages without first returning the securities to the seller. A person who violates ORS 59.115 may recover, "[u]pon tender of the security, the consideration paid for the security, and interest . . ., less any amount received on the security." ORS 59.115(2)(a). The tender must be made before entry of judgment. ORS 59.115(5). Defendant contends that a tender requires delivery of the securities. The statute does not define "tender," and we have not been cited to any appellate decision in Oregon defining that term in the context of ORS 59.115.

The Oregon Supreme Court's common law definition of "tender" is "an offer of payment that is coupled either with no conditions or only with conditions upon which the tendering party has a right to insist." *Fresk v. Kraemer*, 99 P.3d 282, 287 (Or. 2004). In support of that statement, the *Fresk* court cited *Comstock Mfg. Co. v. Schiffmann*, 234 P. 293 (Or. 1925). The *Comstock* case quoted from *Anderson v. Wallowa Nat'l Bank*, 198 P. 560, 565 (1921), that tender, in connection with an executory contract, "is not an absolute, unconditional offer to do or transfer anything at all events, but it is in its nature conditional only, and dependent on, and to be performed only in case of, the readiness of the other party to perform his part of the agreement." 234 P. at 296.

In *Fresk*, the court addressed the meaning of "tender" under a statute that permitted a prevailing plaintiff to recover attorney fees unless, prior to commencement of the action, the defendant tendered to the plaintiff an amount not less than the damages ultimately awarded to the plaintiff. Prior to the commencement of the action, the defendant had offered to pay more than the plaintiff recovered, but the offer was conditioned upon the plaintiff releasing defendant from further liability for plaintiff's negligence claim. The plaintiff contended that the offer did not

constitute a tender because it was conditioned upon the release. The Oregon Supreme Court stated that its common law meaning of the word "tender" was "an offer that is coupled with no conditions or only conditions for which the tendering party has a right to insist." 99 P.3d at 287. The court then held "that defendant was entitled to insist upon a release from further liability for plaintiff's negligence claim as a condition to payment," 99 P.3d at 288, and that "defendant's condition of release from further liability for plaintiff's negligence claim, without more, did not prevent his prelitigation payment offer from qualifying as an effective 'tender,'" 99 P.3d at 289.

Applying the meaning of "tender" in *Fresk*, *Comstock*, and *Anderson*, tender of securities would not require delivery of the securities. It would simply be an offer to deliver the securities in exchange for the consideration paid plus interest. As Defendant argues, "Houston's cause of action under ORS 59.115(2)(a) is an action for rescissionary damages." Under Oregon law, when a purchaser of property is entitled to rescission because of misrepresentations made by the seller, "the property is to be exchanged for the return of payments made on the purchase price." *Farnsworth v. Feller*, 471 P.2d 792, 797 n.4 (1970). Plaintiff did not purchase the securities with a judgment against Defendant; he purchased them with cash. He is therefore entitled to exchange the securities for the return of that cash, not just for a judgment in the amount of his payments.

In arguing that "tender" requires delivery of the securities, Defendant relies upon two sentences in an opinion of the Oregon Court of Appeals in which it stated, "[I]f defendants prevail on their counterclaim alleging plaintiffs' violation of the Oregon Securities Law, they must tender their shares to T. Prentice in order to recover the consideration paid for them. ORS 59.115(2). If that occurs, T. Prentice will reacquire stock in the corporation in the course of this litigation." *Metal Tech Corp. v. Metal Teckniques Co., Inc.*, 703 P.2d 237, 242 (Or.Ct. App. 1985).

The issue being addressed in *Metal Tech* was the trial court's dismissal of plaintiff T. Prentice's shareholder derivative claim against Metal Teckniques Co., Inc., on the ground that he did not have standing. The issues to be tried had been bifurcated, and the counterclaim for rescission of the sale of assets by Metal Tech Corp. to Metal Teckniques was tried first. That sale was rescinded because of plaintiffs' misrepresentations. As part of that sale, T. Prentice, the owner of Metal Tech, had acquired 1,250 shares of stock in Metal Teckniques. The rescission deprived him of the stock and therefore standing to bring a shareholder's derivative action. The

14

individual defendants had also counterclaimed against T. Prentice alleging that they had purchased stock in Metal Teckniques and that he was liable under ORS 59.115 for selling securities by means of material misrepresentations. The trial court had granted summary judgment in favor of the defendants on that counterclaim. The appellate court reversed the grant of summary judgment and remanded that claim for trial. If the defendants prevailed on that counterclaim, they would have to tender the stock to T. Prentice. Therefore, the appellate court instructed the trial court that any decision on T. Prentice's shareholder's derivative action must await resolution of the securities law violation counterclaim because T. Prentice may again be a shareholder.

It was in that context that the appellate court wrote, "[I]f defendants prevail on their counterclaim alleging plaintiffs' violation of the Oregon Securities Law, they must tender their shares to T. Prentice in order to recover the consideration paid for them. ORS 59.115(2). If that occurs, T. Prentice will reacquire stock in the corporation in the course of this litigation." The key phrase is, "If that occurs." Plaintiff reads "that" to refer to the tender, so it would mean if the tender occurs, T. Prentice would reacquire the stock. Based upon that reading, Plaintiff argues that a tender under ORS 59.115(2) requires delivery of the stock. That reading, however, is not consistent with Oregon law as set forth above. It would be consistent with Oregon law, however, if "that" refers to the phrase "in order to recover the consideration paid." If that (recovery of the consideration paid) occurs, then T. Prentice would reacquire the stock. The tender could be conditioned upon return of the consideration paid.

In his reply brief, Defendant also raises additional challenges to the sufficiency of Plaintiff's tender. By letter to Defendant's counsel dated March 3, 2008, Plaintiff's counsel wrote, "We are tendering to you Howard Houston's rights, title and interest in the Wood River Partners LP securities, which we will deliver upon receipt of payment by your client or others of the full amount of the principal and interest stated in the proposed judgment." In his reply brief, Defendant argues, "It must be noted that this letter in no way tenders the securities themselves as required by the plain wording of Oregon law. It merely tenders Houston's right, title, and interest in those securities." There is no indication that Defendant raised that objection in the district court. This Court will not consider issues raised for the first time on appeal, *Parsons v. Mutual of Enumclaw Ins. Co.*, 143 Idaho 743, 746, 152 P.3d 614, 617 (2007), nor will this Court

15

address an issue raised for the first time on appeal in the reply brief, *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005).

We need not base our decision upon how we believe the Oregon courts would interpret the term "tender" in ORS 59.115. The district court did not base its grant of summary judgment solely upon that statute. It also held that Plaintiff was entitled to recover under ORS 59.135 and ORS 59.137. A person who violates ORS 59.135 is liable "for the actual damages caused by the violation, including the amount of any commission, fee or other remuneration paid, together with interest at the rate specified in ORS 82.010 for judgments for the payment of money." ORS 59.137. That statute does not require any tender of the security before obtaining a judgment.

Defendant has not challenged on appeal his liability under ORS 59.135, nor has he contended that the damages awarded are not consistent with the recovery permitted by ORS 59.137. Therefore, even if Plaintiff was not entitled to a judgment under ORS 59.115 due to the lack of what Defendant contends constitutes a tender of the securities, Plaintiff would still be entitled to the same judgment under ORS 59.135 and 59.137.

**F. Is Plaintiff Entitled to an Award of Attorney Fees on Appeal?**

Plaintiff seeks an award of attorney fees on appeal pursuant to ORS 59.115(10) and Idaho Code §§ 12-120 and 12-121. We will address each of these statutes separately.

ORS 59.115(10) provides, insofar as is relevant, that "the court may award reasonable attorney fees to the prevailing party in an action under this section." We have previously held that a statute providing for the discretionary award of attorney fees is remedial and procedural and does not affect the substantive claim for relief, *Jensen v. Shank*, 99 Idaho 565, 566-67, 585 P.2d 1276, 1277-78 (1978), while a statute providing for a mandatory award of attorney fees to the prevailing party is substantive and not merely remedial or procedural, *Griggs v. Nash*, 116 Idaho 228, 235, 775 P.2d 120, 127 (1989). ORS 59.115(10) provides for the discretionary awarding of attorney fees and is therefore a matter of procedure and not part of Plaintiff's substantive claim. "[T]he lex loci controls the substantive rights of the parties, that is, all matters going to the basis of the right itself, while the lex fori controls procedural and remedial matters." 16 Am.Jur.2d *Conflict of Laws* § 6 (1998). ORS 59.115(10) being a matter of procedure, it does not apply in this action.

16

Defendant also seeks an award of attorney fees under Idaho Code § 12-120(3) on the ground that this is an action to recover in a commercial transaction. A commercial transaction is defined as "all transactions except transactions for personal or household purposes." I.C. § 12-120(3). Defendant has not pointed to anything in the record indicating that action is within the statutory definition of a commercial transaction.

Finally, Defendant seeks an award of attorney fees under Idaho Code § 12-121. "Attorney fees can be awarded on appeal under Idaho Code § 12-121 only if the appeal was brought or defended frivolously, unreasonably, or without foundation. If there is a legitimate issue presented by the appeal, attorney fees cannot be awarded under this statute." *Joyce Livestock Co. v. United States*, 144 Idaho 1, 20, 156 P.3d 502, 521 (2007). This appeal presented a legitimate issue as to whether a choice of law analysis applied because we had not previously decided that issue in connection the enforcement in this state of a foreign statutory claim. Therefore, we decline to award attorney fees pursuant to Idaho Code § 12-121.

## IV. CONCLUSION

We affirm the judgment of the district court. We award costs on appeal, but not attorney fees, to the respondent.

Justices BURDICK, W. JONES, Justice Pro Tem TROUT, and Justice Pro Tem KIDWELL, **CONCUR**.

17